# HOLLWEG, Appellant, v. BELL TELEPHONE COMPANY.

### Division Two, March 29, 1906.

1. **NEGLIGENCE: Demurrer to Evidence.** To authorize the court to sustain a demurrer to the evidence, because of its insufficiency to support a verdict, it must appear that, admitting all the evidence introduced by plaintiff to be absolutely true and giving him every reasonable inference to be deduced therefrom, he is not entitled to recover.

2. ——: ——: **Inference.** And in applying this rule to a suit for negligence, it must be remembered that negligence is not a fact which is the subject of direct proof, but an inference from facts put in evidence. Hence, the demurrer admits every material fact proven, or which may be inferred from the testimony.

3. ——: **Master and Servant: Foreman: Vice-Principal and Fellow-Servant.** The foreman who had entire control of the workmen, and gave plaintiff an order to do certain work at a certain machine, was the vice-principal as to plaintiff while he was doing that work, although he himself at times worked at the same machine, and had been so working for a few moments just prior to the accident, during plaintiff's absence therefrom, in obedience to his orders, in assisting other workmen.

4. ——: ——: ——: ——: **Demurrer Erroneously Sustained.** Plaintiff had been ordered by the foreman to work at a certain cross-cut and rip-saw machine and to assist fellow workmen in adjusting their machines. He cleaned off the saw table and went to work, and when the other men were ready for his assistance went to them, and during his absence, about fifteen minutes, the foreman went to the machine, worked there for a few minutes, and went away. Plaintiff returned, looked about to see that the machine table was clean and that no obstructions were in the way, then moved the lever which put the machine in operation, and the saw, which usually made 3,600 revolutions a minute, struck a block of wood, which flew out and put out his eye. The evidence was that a small block left near the saw would be sucked in when the saw began to revolve and when struck by the saw would be thrown out, just as this block was, and that this fact was well known to like mechanics. There was no direct evidence that the

foreman left the block there, but it was shown that the saw table was clean and clear when plaintiff left it, that he looked for obstructions on his return, and that from the side of the table where he worked he could not have seen the block in the position this was in. *Held*, that the foreman was vice-principal of his master as to plaintiff, and that no inference can be drawn from the evidence other than that it was through his negligence that the block which caused the injury to plaintiff was left on the table, and the court erred in sustaining a demurrer to the evidence at the close of plaintiff's case.

5. ——: ——: **Duty of Master.** It is the duty of the master to furnish his employee a reasonably safe place in which to work, and not to expose him to unknown risks not incident to his employment, and the master cannot relieve himself of such responsibility by delegating his duty to some other person; and if his vice-principal is guilty of negligence which causes an injury to an employee, the master is liable.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED AND REMANDED.

*Rassieur, Schmurmacher & Rassieur* for appellant.

(1) The duty to furnish the employee a safe place in which to work and not to expose him to unknown risks not incident to the employment is personal to the master, and the master cannot relieve himself from responsibility by delegating this duty to a servant. Dayharsh v. Railroad, 103 Mo. 570. (2) Where a foreman is guilty of negligence in failing to perform the duty which he owes as vice-principal towards an employee, the master is liable for the injuries sustained, even though the foreman is also engaged in the labors of a fellow-servant. Fogarty v. Transfer Co., 180 Mo. 490.

*Seddon & Holland* for respondent.

The court did not err in sustaining respondent's demurrer to the evidence. This demurrer should have been sustained for several reasons: (a) Because ap-

pellant fails to make out the charge of negligence contained in his petition. Chitty v. Railroad, 148 Mo. 54; McManamee v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 314; McCarty v. Hotel Co., 144 Mo. 397; Feary v. Railroad, 162 Mo. 75. (b) Because the evidence shows that if appellant was injured as the result of any negligence, it was negligence on his own part. (c) Because the evidence shows that if the injury complained of by appellant was due to any negligence on the part of foreman Loughman, said foreman, at said time, was acting in the capacity of co-worker or fellow-servant and not in the capacity of a vice-principal. Dayharsh v. Railroad, 103 Mo. 570; Fogarty v. Transfer Co., 180 Mo. 490; Bane v. Irwin, 172 Mo. 306; Stephens v. Lumber Co., 86 S. W. 481; Garland v. Railroad, 86 Mo. App. 581; Livengood v. L. & Z. Co., 77 S. W. 1077; Gaul v. Beckstein, 173 Ill. 183; Reichl v. Flynn, 196 Pa. St. 263; Reed v. Stockmeyer, 74 Fed. 186; Allen v. Goodwin, 92 Tenn. 315; Hussey v. Coger, 112 N. Y. 614; Klockinsky v. Lumber Co., 93 Wis. 417; Gain v. Railroad, 101 Tenn. 380; Railroad v. Manzy, 98 Va. 629; Railroad v. Torrey, 58 Ark. 217; McElligott v. Randolph, 61 Conn. 157; Holtz v. Railroad, 69 Minn. 524; Lindvall v. Wood, 41 Minn. 217; Daves v. Railroad, 98 Cal. 19; Railroad v. Baugh, 194 U. S. 368; Railroad v. Charless, 162 U. S. 360.

BURGESS, P. J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff through and by reason of the negligence of defendant's servants and employees.

The petition alleges that defendant was at the time of the alleged injury a corporation engaged in the business of furnishing telephone service, and at the same time operating a manufacturing plant, and that plaintiff was, and for several years had been, in defendant's employ, engaged in working on certain wood-working

machinery in its said establishment. That on or about the third day of July, 1901, plaintiff had been working at one of the machines, and thereupon, on the day aforesaid, the plaintiff was directed by the foreman to leave said machine and to cut certain material at one of the circular saws in said establishment; that plaintiff thereupon, by means of a certain lever, put said saw in motion, when a small block of wood which had been lying on the saw table, in contact with said saw, was violently thrown off, and struck plaintiff in one of his eyes; that plaintiff did not see the block of wood until after it was thrown off by the saw as aforesaid; that said injury was due to the negligence of the defendant, in this, that the defendant's foreman, who ordered the plaintiff to work at said saw, carelessly and negligently left the block of wood upon the table where it would be caught by the saw when put in motion by the plaintiff and in negligently leaving said saw and saw-table in such unsafe condition that the plaintiff could be injured thereby in the manner aforesaid, and in failing to give plaintiff any warning of its unsafe condition, although the defendant, through its foreman, had actual knowledge of such dangerous condition. That, in consequence of being struck by said block of wood as aforesaid, plaintiff's eye was so badly injured that since said time it became totally blind and had to be removed. That plaintiff has, in consequence of such injury, suffered and still suffers and will continue to suffer, in the future, great pain and mental anguish; that his injury is permanent, and that in consequence thereof he has become permanently disabled from working at his trade aforesaid, and by reason of the premises plaintiff has been injured in the sum of ten thousand dollars.

The defenses were a general denial and plea of contributory negligence. The answer further alleges that all of the details of the surroundings amid which, and of the apparatus with which, plaintiff was working on the occasion mentioned in his petition were open

and obvious, and were known to plaintiff, or by the exercise of ordinary care might have been known to plaintiff, and that whatever dangers, if any, existed in working amid said surroundings, and with said apparatus on said occasion, were open and obvious and were known to plaintiff, or by the exercise of ordinary care might have been known to plaintiff, and were incident to plaintiff's employment, and that plaintiff assumed whatever risk, if any, there was in working amid said surroundings on said occasion.

Plaintiff, by reply to defendant's answer, denied all new matter therein contained.

At the close of plaintiff's evidence the defendant interposed a demurrer thereto, which was sustained; whereupon plaintiff took a nonsuit with leave to move to set the same aside. A motion for that purpose was then filed by plaintiff and overruled by the court; hence, this appeal.

The parties practically agree upon the facts disclosed by the record, which are substantially as follows:

Plaintiff was employed by the defendant as a cabinetmaker in its wood-working machinery department, or carpenter shop, in the city of St. Louis. The shop was in charge of a foreman named Loughman, who directed the men in every respect, and who alone hired and discharged the employees of this department. The machinery in the shop consisted of a crosscut and rip saw, a universal boring machine, and several wood-working machines. The plaintiff was forty years of age, and had been a machine hand since he was nineteen. He had been in the employ of the company for several years. He did work at all of the machines, but on July 3, 1901, the day of the injury, he was engaged, under the direction of the foreman, to cut out certain work at this crosscut and rip saw. This was rigged in a saw table, about seven feet long from north to south, and five feet wide from east to west; the table was about

thirty inches high; the saw revolving on a spindle fastened underneath, projected through the table at a distance of about eighteen inches from the front of the table, the south end, where the operator would have to stand. A cast-iron guage was fastened to the table, east of the saw and parallel with it, and placed at such distance from it as was from time to time required to saw the boards to the required width. This gauge was solid, so that one could not look through it when approaching from the side, and was about twenty-four inches long and about seven inches high standing upright. The saw was operated by means of a lever attached to the east side of the table.

On the morning of the injury the plaintiff had been directed to cut out certain material at this crosscut and rip saw. The order was a general one to get out ten P. B. X's, and was given when the plaintiff began work in the morning, about eight o'clock, and was the last order given him that day by the foreman. When plaintiff began work in the morning he was told by the foreman to help Mack and Marqua fix their machine. These were the only orders given the plaintiff prior to the accident. On the morning of the injury, after working for some time with the crosscut and rip saw, plaintiff, in obedience to the previous order received from the foreman, went over to what was termed the universal machine to assist his co-workers, Mack and Marqua.

He remained at the universal machine about fifteen minutes and then returned to the saw table to resume his work. During that interval, however, the foreman, Loughman, had been at the saw table to cut out something, and having finished, stopped the saw and went away.

The testimony is that a block struck the plaintiff in the eye, but there is no testimony as to its position on the table, and no direct testimony whatever that it was left there by the foreman. The plaintiff stated that when he got back to the machine, he looked but

saw nothing. He could see all around on the saw table. As far as he could see, there was nothing wrong about the saw table. Thereupon he pulled the lever and set the saw in motion and proceeded to his position in front of the saw table. Just as he reached there, a block of wood was thrown violently against plaintiff's face.

It struck him in the eye, with the result that the sight of one eye was entirely destroyed and the sight of the other endangered.

The evidence showed that when the plaintiff left the saw to go over to the universal machine he left his saw table clean and clear; that in the interval no one except the foreman had gone near the machine and that the block which hit the plaintiff had been cut out by the foreman and had been left on the table by him in close proximity to the saw. It also appears in evidence that it is well known to machine workers that when such a block is left close to the saw the motion of the saw will draw it in and will throw it off, just as happened in this case. The evidence also showed that no warning of any kind was given by the foreman to the plaintiff that he had left this block lying on the table. Nor was there any direct testimony that the foreman had left the block that struck plaintiff, on the table, and there is no evidence that the foreman had any actual knowledge that any block had been left on the table.

The testimony further showed that if there had been a block anywhere near the saw, it could have been seen by the plaintiff by making a casual glance from any position except one; that is, the plaintiff in making his examination, could have detected the block if there was one on the table, by looking from the north side of the table, from the west side or the south side. The only point of view which would be at all obstructed would be if he was looking from the east, and the plaintiff had to go to the south side of the machine to operate it.

It also appeared in evidence that the foreman personally worked at the various machines at times like

any other mechanic, doing probably one-eighth as much work at machines as the plaintiff himself.

The only orders given by the foreman to the plaintiff that day were when he started work at eight o'clock. He then told him to get out some P. B. X's, and also to help Mack and Marqua fix up their machine, and just before the accident, he was called over by Mack and again went over to help them at their machine. This latter commission, however, was done without any further orders from the foreman.

It is a rule of universal application that it is the duty of the master to furnish his employee a reasonably safe place to work, and not to expose him to unknown risks not incident to the employment, and that the master cannot relieve himself of such responsibility by delegating his duty to some other person. [Doyle v. Trust Co., 140 Mo. 1.] In the case at bar, however, the plaintiff's right of recovery is not bottomed on that theory, but upon the ground that the foreman was guilty of negligence in failing to perform the duty which he, as vice-principal, owed to plaintiff as an employee; and if the plaintiff was injured by reason of the foreman's failure to discharge such duty, the master is liable for damages for the injury sustained, even though the foreman occasionally worked the machinery and acted in the capacity of a co-laborer or fellow-servant.

"A vice-principal, then, as the term is used in the law of fellow-servants, is a servant who represents the master in the discharge of those personal or absolute duties which every master owes to his servant." [12 Am. and Eng. Ency. Law (2 Ed.), 948.] "As a general rule 'fellow-servants may be said to be persons who are engaged in a common employment in the service of the same master.'" [12 Am. and Eng. Ency. Law (2 Ed.), 990.]

In the case of Fogarty v. Transfer Co., 180 Mo. 490, the plaintiff, who was a teamster in the employ of

the defendant, was endeavoring to back his team into an alley, in accordance with the direction of the foreman of the company, but was unable to do so, when the foreman himself undertook it, but, through his carelessness or negligence, caused the wagon to back and injure the plaintiff. The court held that, under the circumstances, the jury had the right to infer that the negligent act of the foreman was committed by him in his capacity as vice-principal, not as fellow-servant. MARSHALL, J., in speaking for the court, said: "Whenever the injury resulted from the act or order of the vice-principal, whether acting by himself or through another, while exercising his power and discharging his duty as a vice-principal, the master has been held liable. . . . The rule here announced can only mean that a foreman may act as a co-laborer at the same time, and that even if he is acting as a co-laborer at the time of the injury, nevertheless, if the injury was caused by his act in his capacity as foreman, and not in his capacity as a co-laborer, the master is liable."

There is no evidence to justify the conclusion that plaintiff himself was guilty of negligence contributing to his injury. He testified that he is a wood-working machinist, aged forty years; that he was in the employ of the Bell Telephone Company for about three and one-half or four years, and until about six or seven months prior to the trial. That he was employed in the wood-working machinery department or carpenter shop located on the third floor of premises at No. 1007 Lucas avenue, in the city of St. Louis. That he was injured on July 3, 1901, between the hours of nine and ten o'clock in the morning. That he went to work at 8 o'clock that morning. That the machinery in the shop consisted of an improved crosscut and rip saw, a band saw, a universal boring machine, a planer and a sandpapering machine; that he was put to work at all of them from time to time. That on the morning when he was injured, he was working at this crosscut and rip

saw, and had been working at it from the time he started to work until he was suddenly called away. That the shop was in charge of Joseph Loughman, foreman, and that he had been foreman during all the time he (Hollweg) had worked in the shop. That Loughman was over the men in the shop—the cabinet workers and machine hands; he gave orders to everybody in the shop, and all had to obey him; he also employed and discharged the help in this department. Hollweg further testified that he was working at this crosscut and rip saw, cutting out work which was called "P. B. X." (private branch exchange) for exchange boards. That he was called away from this machine to another machine in the shop called a universal machine, by two employees named Marqua and Mack. That he was at this universal machine about fifteen minutes. That the improved crosscut and rip saw was a cabinet saw, the frame being made of iron and the saw of steel. That the top part, or the table of the machine, as it stood in the shop, with the extension, was about six and one-half or seven feet long from north to south, and about five feet wide from east to west. That the table was about thirty inches from the floor—a little higher than an ordinary table. That the saw came up through an opening in the table, about eighteen inches from the front where the operator stood. The saw was set to cut seven-eighths inch boards, and projected about one-half inch above the board and one-half inch above the table. The saw was fastened on a spindle underneath the table, and the spindle revolved with the saw; the lever was placed at the east side of the table; there was also a gauge on the table, used to set it to different widths of lumber which it was desired to rip; the gauge was of cast-iron, about half an inch thick, and stood about seven inches above the table; was twenty-four or twenty-six inches in length, and was fastened at the ends to the table. That there was no space between the gauge and the table itself; it lay flat on the table.

That the gauge was made of cast-iron and could not be looked through; the gauge was placed alongside of the saw. That the lever which was placed on the east side of the table was used to operate the saw; it could not be operated in any other way; it was not on the table itself, but came through the floor, the belt running underneath the floor. That the operator, in operating the machine, stood in front of the saw, at the south end, facing north; the saw revolving south, towards the operator; the teeth went down under the table and came up in the back and went down in front. That when he was called away from the saw, he left it perfectly clear, as was his custom. That before leaving the machine he stopped it with the lever; the machine was stopped by pulling the lever towards the operator, and it was started by pushing the lever forward. That when he left the machine he went over to another machine called the universal machine, in the same room, about fifteen feet east; that he was at the universal machine about fifteen minutes, and while he was there he noticed that Joseph Loughman, the foreman, was working at the crosscut and rip saw machine; that there was nothing between the universal machine and the crosscut and rip saw machine to intercept his view, and that while he was at said universal machine no person except the foreman was at the crosscut and ripsaw machine; that no one else was allowed to work at that machine excepting himself and the foreman. That he saw Loughman quit, stop the saw and leave it; that he (Hollweg) then went back from the universal machine to the crosscut and ripsaw machine and started it up; that he still had work to do at this machine under the orders of the foreman. That he looked over the top and was able to see around on the saw table, but saw nothing wrong with the table or machine. That he walked around to the side where the lever was, and when he turned it on he was in front of the table, and

just as he faced the table a piece or block of wood was thrown out of the machine which struck him in the eye; that the saw ran at the rate of 3,600 revolutions per minute, and that he did not see the block coming towards him, as it came too fast; that after he was struck Pete Mack picked up the block, which was lying in front of him; that there were no other blocks on the floor.

That he was under the care of and received treatment from Dr. Saxl for about three and one-half or four months; that during the first month of that time he called to see the doctor every day, and during the second month about every other day. That since that time he had gone there, off and on, for a year and a half. That his eye was examined the day before the trial, and that he was under treatment then, and also was the month before; that the eye was totally blind and had been from the time he was injured.

That on July 5th word was sent to him by foreman Loughman that he had better go to work, or he might be docked for every hour he stayed at home. That he went back, and was told to do what he could, and that what he could not do foreman Loughman would. That for about five or six weeks he was prevented from working at all. That he found it difficult to do a full day's work; that it strains his other eye and is very weakening; that he is able now to work eight hours a day by straining his right eye. That the light hurts him at night, and that he cannot see to read; that part of his work he could do without glasses, but other parts he could not do; that he would be afraid of cutting himself without the aid of glasses. That his right eye was affected, so that at a distance of two feet he could not judge distances correctly, that "it just flickers." That the injury at the time was very painful and put him out of his mind for the rest of the day and night, and that he did not rest that day or night; that his brother led him to the doctor's office, as he could not see the light. That the eye still pained him nearly all the time;

that it pained him when the wind blew or the electric light flashed on the eye. That there had been no improvement since he was injured, but that the eye had grown worse.

Peter Mack, on behalf of plaintiff, testified that on July 3, 1901, he was working for the Bell Telephone Company in its wood-working machine shop. That on the morning when Hollweg was injured he was working at a machine called the universal machine, in company with a fellow-employee named Marqua. That Hollweg was working on the crosscut and ripsaw machine, when witness called him over to the universal machine, at which latter machine he was engaged about fifteen minutes; that while Hollweg was at this machine witness saw foreman Loughman working at the crosscut and ripsaw machine, and that during the time Hollweg was at the universal machine no one else excepting the foreman worked at the said crosscut and ripsaw machine. That when Hollweg walked away from the universal machine to go back to the crosscut and ripsaw, he and Marqua went with Hollweg; that they were close to him, or about two feet to the rear. That he was directly behind Hollweg and saw him struck by a block, and just as Hollweg fell he (witness), picked up the block and said, "George, here is the block that hit you," and Hollweg said, "I can't see it." That he (witness) saw the block fall on the floor; that there were no other blocks around there. That he looked at the block as soon as he picked it up, and noticed that the teeth of the saw had cut into the block. That he turned the block over to Hollweg a few days later.

On cross-examination, witness Mack testified that he was then employed by the Jones Brothers' Metal Foundry, and was no longer employed by the Bell Telephone Company. That at the time of the accident he had been working for the telephone company about a year and a half. That he worked with Hollweg, but did

not operate any machine himself, with the exception of the universal machine. That there were four or five machines in the shop called the universal, the crosscut, the rip, the band saw, the sand-paperer and another. That he had seen Hollweg work there previous days, every day in the week. That Hollweg worked on all machines in the shop. That he frequently saw Hollweg work at the rip saw, and that he was working at it just before he called him. That he had never seen him adjusting the same; it was always working in good condition. That he oiled the machine every morning. That he saw him clean it off twice a week, and that he sharpened the saw about twice a week. That while he was working near the saw, he had frequently seen Hollweg thrust pieces of wood away from the gauge. That in the morning when he began to work, when he came there to oil up, he had seen him brushing foreign wood away and clean the machine off. That he had seen him, when about to start in the morning, oil the saw and brush away foreign material on the saw table, and during the time frequently saw him clean off the foreign material that gathered there.

That he did not see the piece of wood that struck Hollweg fly towards his eye, but that he did see it fall from his face to the floor. He did not see in what direction it went, or see it hit his eye. That the universal machine was east of the saw, and the gauge of the saw was on the east side of it; the surface of the table was of iron, and the only things that stuck up on the table were the saw, which came up through a crevice in the table, and the gauge. That there was nothing to intercept the view but the gauge, and that any one standing south, north or west of the table had a full view of everything on the table, excepting behind the gauge; and from the east side a full view excepting he could not see west of the gauge; the gauge was about thirty inches long and about seven inches high.

That Loughman was the foreman; that he had been there, giving orders, ever since he (witness) had been working in the shop. That besides giving orders, he had seen him running machinery once in a while, and doing work around the shop. That he had seen him working on the crosscut and ripsaw machine, and all other machinery. That he saw him do such work two or three times a day, all through the period of time he was there. That in addition to hiring and discharging the men and directing the work, he himself worked on various machines, just like any other mechanic. That he was positive that he saw Loughman working at the crosscut and ripsaw machine that day. That as he walked over with Hollweg towards this machine, he did not look on the table to see if anything was on it.

On redirect examination, witness testified that he did not show the block which struck Hollweg to the foreman, but that he laid it in a cupboard where he kept tools. He subsequently saw the piece of wood out of which the block had been cut, in Loughman's hands. That he was helper to Hollweg, and did not work all the time at the universal machine.

Witness further said, on recross-examination, that he sometimes cleaned and oiled the universal machine, and that Hollweg attended to the cleaning and oiling of the planer, and he or Hollweg attended to the cleaning and oiling of the other machines. That they cleaned the machines on Wednesday and Saturday mornings, and that it was either his or Hollweg's duty to do this; that Hollweg generally attended to the cleaning of the ripsaw.

On redirect examination, witness said that by "cleaning" was meant cleaning the blocks of wood and sawdust off of the head of the table and underneath, and that this was done in the morning before the day's work started. That the universal machine was the machine nearest the crosscut and ripsaw; that it was

about ten or fifteen feet away. That when they left the universal machine to go over to the crosscut and ripsaw machine, the universal was stopped, and it was not in operation when Hollweg was hurt; that there was no other saw or any other machine in operation at the time when Hollweg was hurt excepting the crosscut and ripsaw which he started.

The testimony of plaintiff tends to show that he kept his saw table clean, and that when, in obedience to the direction of the foreman, Joseph Loughman, he went over to the universal machine to assist one of the other employees, he left his saw table in that condition; that during his absence of some fifteen minutes from the table, no one except the foreman had gone near the machine, and that the block which hit plaintiff had been cut out by the foreman and had been left on the table; that while he was at the universal machine he noticed the foreman working at the crosscut and ripsaw machine; that there was nothing between the universal machine and the crosscut and ripsaw machine to intercept his view; that no one else except the foreman was at the crosscut and rip-saw machine while plaintiff was absent therefrom, and no one except the foreman and himself was allowed to work at that machine. That he saw the foreman quit, stop the saw and leave it. That he (plaintiff) then went back from the universal machine to the crosscut and ripsaw machine, and started it up; that he still had work to do at this machine, under the order of the foreman; that he looked over the top of the machine and saw nothing wrong about the machine or the table. That when he started up the machine, and just as he got in face of it, a piece of block was thrown out of the machine which struck him in the eye and seriously injured him.

Peter Mack testified that he saw the foreman working at the crosscut and ripsaw machine just before the plaintiff was hurt, and during his temporary absence therefrom. That by "cleaning" was meant cleaning

the blocks of wood and sawdust off of the head of the table and underneath, which was done before the day's work started.

The evidence shows that at the time of the accident and injury, and for several years prior thereto, Joseph Loughman was foreman; that he was over the men in the shop, gave orders to everybody in the shop, and all had to obey him; that he also employed and discharged the help in this department; that he worked at all the machines, at times, and did about one-eighth as much work as plaintiff.

Under this state of facts, conceding them to be true, did the court err in sustaining the demurrer to the evidence? In Baird v. Railroad, 146 Mo. 265, it was held that before a court was authorized to sustain a demurrer to the evidence, because of insufficiency to authorize a verdict, it must appear that, admitting all the evidence introduced by plaintiff to be absolutely true, and giving him every reasonable inference to be deduced therefrom, he is not entitled to recover. And in applying this rule to a suit for negligence, it must be remembered that negligence is not a fact which is the subject of direct proof, but an inference from facts put in evidence. "A demurrer of this character admits every material fact proven, and which may be inferred from the testimony, to be true, and should never be sustained unless the evidence, when thus considered, fails to make proof of some essential fact." [Young v. Webb City, 150 Mo. 333; Bender v. Railroad, 137 Mo. 240; Rine v. Railroad, 100 Mo. 228; Noeninger v. Vogt, 88 Mo. 589; Myers v. Kansas City, 108 Mo. 480; Baum v. Fryrear, 85 Mo. 151.]

It is clear to our minds, from the evidence in this case, that the foreman was the vice-principal of his master, the defendant, and that no inference can be drawn from the evidence other than that it was through his negligence that the block which caused the injury to plaintiff was left upon the saw table. The evidence

tends to show that the table was clean and clear when plaintiff left it, by the direction of the foreman, to assist some other co-laborer only a few feet away, and that no one except the foreman was at the table or operated the machine during the plaintiff's temporary absence. When plaintiff returned to the machine to finish up the work which he had been ordered to do in the morning, he discovered no foreign matter upon the table or in contact with the saw, but when he started the saw a small block of wood which, according to the evidence, must have been left on the saw table by the foreman, was hurled by the saw into his face, seriously injuring one of his eyes.

Even if the foreman was a co-servant with plaintiff at the time he was operating the saw, and occasionally did work of a character similar to that done by plaintiff, he was at the same time a vice-principal (Fogarty v. Transfer Co., supra), and as such the defendant was responsible for his negligence.

The judgment is reversed, and the cause remanded. All concur.