# MEYER BENDER, by Next Friend, v. KROGER GRO-CERY & BAKING COMPANY, Appellant.

### Division Two, October 6, 1925.

1. **NEGLIGENCE: Fellow-Servant: Safe Place.** The duty of the master to exercise ordinary care to furnish his servant a reasonably safe place in which to work cannot be delegated to a fellow-servant so as to relieve the master from liability for the negligent performance by such fellow-servant of an act constituting a part of the master's duty.

2. ———: **Duty of Master to Require Fellow-Servant to Maintain Safe Place.** An employer cannot shift his duty to provide a safe place in which his employee is instructed to work, to the fellow-servant of the employee. The plaintiff, the helper of the driver of a truck provided for them in their work of delivering bread from defendant's bakery to stores, was directed by the foreman of the loading platform to enter the trailer and remove therefrom empty bread trays, and the same foreman directed the driver to detach the tractor from the trailer, and the driver detached it in such a negligent manner as to cause the trailer to topple over and injure plaintiff, who could not see what the driver was doing and did not know that the tractor was being detached. *Held*, that the trailer was for the time being plaintiff's place of work, and it became the duty of defendant to exercise ordinary care to keep the place reasonably safe while plaintiff was engaged in the work he had been directed to perform, and that duty included the correlative duty to see to it that the driver did not perform his work in such a negligent way as to render the place unsafe for plaintiff's use while performing the work. Nor did the fact that the driver and plaintiff were ordinarily fellow-servants alter the defendant's duty to keep safe the place in which plaintiff had been instructed to do the work, since the negligent act of the driver was not merely an incident to the relationship of him and plaintiff as fellow-servants, but an act of the driver, in obedience to the order of the foreman, which affected the safety of the place in which plaintiff was instructed to work.

Corpus Juris-Cyc. References: Master and Servant, 39 C. J., Section 445, p. 322, n. 33; Section 707, p. 590, n. 3; Section 717, p. 602, n. 79, p. 608, n. 92.

Appeal from St. Louis City Circuit Court.—*Hon. George E. Mix*, Judge.

AFFIRMED.

*Bryan, Williams & Cave* for appellant.

The accident, resulted solely from the negligence of the truck driver; was the result of an act of a fellow-servant, and was not caused by the failure of appellant to furnish respondent with a safe place in which to work. Under these facts the court erred in setting aside the nonsuit and in granting respondent a new trial. McIntyre v. Tebbetts, 257 Mo. 127; State ex rel. v. Ellison, 283 Mo. 539; McCall v. Nugent D. G. Co., 236 S. W. 326; Rowe v. United Rys. Co., 211 Mo. App. 544.

*Roessel & Minton* for respondent.

(1) It is the positive non-delegable duty of the master to provide and maintain a reasonably safe place for the servant to work. Koerner v. Car Co., 209 Mo. 157; White v. Montgomery Ward, 177 S. W. 1090; Zellars v. Water Co., 92 Mo. App. 123; Schiedler v. Iron Works, 172 Mo. App. 688; Mullery v. Tel. Co., 180 Mo. App. 128; Jackson v. Butler, 249 Mo. 342; Bright v. Brick Co., 201 S. W. 643; Martin v. Barr D. G. Co., 126 Mo. App. 385; Mitchell v. Polar Wave Ice Co., 227 S. W. 666; McCall v. Nugent D. G. Co., 236 S. W. 326; Sneed v. Shapleigh Hdw. Co., 242 S. W. 699; Bodemueller v. Columbia Box Co., 237 S. W. 880. (2) Whenever the master delegates to another the performance of a duty to his servant which the master has impliedly contracted to perform in person or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middleman whom he has selected as his agent, and to the extent of the discharge of those duties by the middleman he stands in the place of the master and becomes as to that duty the master

himself. Koerner v. Car Co., 209 Mo. 157; White v. Montgomery Ward, 177 S. W. 1090; Zellars v. Water Co., 92 Mo. App. 123; Koenig v. Rys. Co., 243 S. W. 123; McCall v. Nugent D. G. Co., 236 S. W. 327; Schuh v. Am. Car Co., 241 S. W. 642; Sneed v. Shapleigh Hdw. Co., 242 S. W. 699; McNulty v. Atlas Portland Cement Co., 249 S. W. 734.

BLAIR, J.—Action in damages by an employee for personal injuries alleged to have been caused through the negligence of his employer. Trial by jury was begun, and, at the close of the plaintiff's case, the trial court gave an instruction in the nature of a demurrer to plaintiff's evidence. Thereupon plaintiff took an involuntary nonsuit with leave to move to have same set aside. Thereafter the court sustained plaintiff's motion to that end and granted a new trial. From this order the defendant has appealed. The amount claimed as damages fixes our jurisdiction.

The sole question is the sufficiency of the evidence to entitle plaintiff to have his case submitted to a jury upon the allegation of the amended petition that his injuries were caused by the negligence of defendant in failing to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work. The answer was a general denial.

That plaintiff was injured by the negligence of another employee and was himself in the exercise of due care at the time, is not disputed by defendant in its brief here. It is the contention of defendant that plaintiff's injuries were caused by the negligence of a fellow-servant, for which defendant is not liable. The vital question then is whether the particular act of defendant's servant, relied upon by plaintiff, was the act of a fellow servant, *as such,* or the act of the master. We will detail the evidence bearing upon that question.

Defendant is a corporation engaged in the grocery and baking business. It had numerous grocery stores in St. Louis and operated a bakery in that city, from

which it supplied bread to its stores. Plaintiff was employed as a helper on a delivery truck, and it was part of his duty, in company with the truck driver, to deliver bread. The bread was loaded in trays upon trailers. The tractor, which furnished the motive power, had four wheels and the trailer had two wheels. When the trailer was connected with the tractor, the front end thereof rested upon and was attached to the tractor by an appliance appropriate for the purpose. The trailer could be detached from the tractor and, when so detached, it was necessary to support the front end of such trailer to keep it from tipping over. For this purpose the trailer was provided with a leg which could be let down before the tractor was disconnected. This leg kept the trailer in the proper position after the tractor was removed. The leg was described as a sort of jackscrew. When it was in use, it kept the trailer in a stable horizontal position and fully supported the trailer.

One Rufgardner was the driver of the truck. Plaintiff testified that he was directed to work under Rufgardner when they were out together making deliveries. When he was at work at the loading platform of the bakery he was under the orders of Ben Easterday, who was a sort of loading platform foreman and had charge of the deliveries of the bread from the bakery to the trucks.

When the truck load of bread had been delivered, it was the practice of the driver and his helper to return to the bakery for another load. If they found a trailer there already loaded, the trailer carrying the empty bread trays would be backed up to the platform, the leg would be let down, the tractor would be disconnected and would be moved away and attached to the loaded trailer. Plaintiff and his driver would then go out again to make deliveries. If there was no trailer already loaded, they would back the trailer up to the loading platform, remove the empty bread trays and proceed to load the same trailer and to go out again to make deliveries. When a trailer would be backed up to

the loading platform, its tail gate would be let down and rest upon the loading platform so that the loading platform, tail gate and floor of the trailer would form one even and continuous working platform or floor. The trailer itself was enclosed.

On the day plaintiff was injured, he and the truck driver, Rufgardner, returned to the bakery after having delivered a truck load of bread. Easterday, the man in charge of the loading platform, testified that he told plaintiff to unload the empty bread trays off the trailer and to get ready to re-load. Plaintiff began to unload empty trays. Easterday then found that a trailer at the end of the platform had already been loaded and he told Rufgardner to drop their body (trailer) there. He did not say anything to plaintiff about moving the tractor. Plaintiff was at work inside the trailer and had no notice of the intention to move the tractor. Rufgardner disconnected the tractor from the trailer and moved the tractor away without letting down the leg. Plaintiff could not see what Rufgardner was doing and did not know the truck was being moved. The trailer tipped over and plaintiff sustained the injuries of which he complains.

The mere statement of the manner in which the injury to plaintiff occurred is sufficient to demonstrate that it was caused by the negligent act of Rufgardner. Defendant does not contend otherwise. Its position is that, assuming that Rufgardner was, for some purposes and for part of his time, a vice-principal of defendant, at the time of the accident he was not acting in that capacity. We will assume, without so deciding, that Rufgardner was a mere fellow-servant of the plaintiff at the time. If the injury was caused by the negligent act of Rufgardner *in his capacity as fellow-servant,* the plaintiff cannot hold defendant liable therefor. The dual capacity doctrine is firmly established in this State. [Fogarty v. St. Louis Transfer Co., 180 Mo. 490; Bien v. St. Louis Transit Co., 108 Mo. App. 399; Edge v.

Railway Co., 206 Mo. 471; Hollweg v. Telephone Co., 195 Mo. 149.]

The duty of the master to exercise ordinary care to furnish his servant a reasonably safe place in which to work is one of the duties owing by the master to his servant which cannot be delegated to a fellow-servant so as to relieve the master from liability for the negligent performance by such servant of an act constituting part of such duty of the master. The following cases, among others, are cited in plaintiff's brief in support of this proposition and amply support same. [Koerner v. St. Louis Car Co., 209 Mo. 141; White v. Montgomery Ward & Co., 191 Mo. App. 268; Zellars v. Water & Light Co., 92 Mo. App. 1. c. 123 to 127; Scheidler v. Iron Works, 172 Mo. App. 688.]

Our task then is to determine whether the act of Rufgardner, in obedience to an order of Easterday, was an act affecting the safety of the place where plaintiff was directed to work or was merely an act incident to the relationship of plaintiff and Rufgardner as fellow-servants. Defendant cites and relies upon four cases, the first of which is McIntyre v. Tebbetts, 257 Mo. 117. There Kuhr was the driver of the truck and had authority to hire extra men to help him load and unload his truck and to direct them in so doing. Under such authority he hired McIntyre. Upon instructions from Kuhr, McIntyre got off the truck to do an errand and, in attempting to get back upon the truck, was injured by the negligent act of Kuhr in starting the team while he was in the act of climbing back upon the truck and while he had his foot upon the hub of the wheel. Four of the judges of this court held that Kuhr in negligently starting his team too quickly and with a jerk was acting in the capacity of a fellow-servant. Three of the judges dissented. The act of Kuhr in directing McIntyre to perform an errand expressed the idea of his dominance over McIntyre. With the thought of that direction to McIntyre disassociated from Kuhr's particular act in starting the team, not the slightest difficulty is encoun-

tered in determining the status of the two men as fellow-servants at the time of the injury. Presumably, the truck was in good repair and the team tractable. The safe place to work and safe instrumentalities with which to work had been provided. It was the negligent use of such instrumentalities by a fellow-servant which caused the injury. There was no question of safe place to work in that case.

The next case cited is State ex rel. Duvall v. Ellison, 283 Mo. 532, which was a *certiorari* case. In that case we found no conflict with McIntyre v. Tebbetts, supra, and quashed our writ. The case furnishes no support for defendant's contention here. However, to show that the place of work may be wherever a servant is required to work, we quote a portion of Judge WALKER's opinion, which quotes approvingly from the opinion of the Court of Appeals, as follows:

" 'There is, however, another view of the case, which, if sound, renders the defendant liable, if the facts are believed by the jury, without regard to whether Blough was a fellow-servant or not; and that has to do with the charge of negligence in failing to furnish plaintiff's son with a reasonably safe place in which to work or in failing to keep it reasonably safe. Such a duty is a primary duty, which is non-delegable. [Combs v. Round Tree Const. Co., 205 Mo. 367, 104 S. W. 77; Dayharsh v. Hannibal Ry. Co., 103 Mo. 570; . . . Miller v. Mo. Pac. Ry. Co., 109 Mo. 350, 357; . . . White v. Montgomery Ward & Co., 191 Mo. App. 268, 177 S. W. 1089; Hollweg v. Bell Tel. Co., 195 Mo. 149; . . . Herdler v. Buck's Stove Co., 136 Mo. 16, 37 S. W. 115; Koerner v. St. Louis Car Co., 209 Mo. 141.]

" 'Defendant seeks to avoid this ground of liability on the theory that the place where the boy was assigned to work was elsewhere than at the fire where the explosion occurred. His contention is that the boy's place of work was at the stumps and that the fire was some 200 yards from where they were. We have carefully searched the record, but have been unable to find any-

thing showing how far the stumps were from the fire. But, assuming that they were that far away, or were where some other men seem to have been at work that distance away, still plaintiff's son was not away from his working place when at the fire warming his auger. The whole affair, stumps and fire, were in the field and close enough together to constitute the place of work, when Blough told the boy to go down there to the stump patch, get his auger and warm it and go to work. The boy, in obedience to that command, went down to the field, and found two men had preceded him and had built a fire. He had not been there the Saturday before, and did not know the precise spot at which the men had stopped work, nor did he know where the augers were. He said that, when he was told to go down there and get an auger, he supposed the other men knew where the augers were. . . . Plaintiff's son did not disobey instructions, but obeyed them. He went down to the field where the work was to be done, and found a fire there, and in a moment one of the hands, at Blough's direction, brought the augers to the fire and the boy proceeded to warm his as directed.

" 'While there is no one who expressly states that Blough directed the dynamite to be brought to the fire, yet the inference may well be drawn that it was brought there at his direction, since he came to the fire, apparently knowing it was there, began the work of preparing it for use, and ordered other caps to be brought; and . . . everything that was done that morning was under his command and direction. The jury, therefore, could find that Blough also directed the bringing of the dynamite to the fire. And he began the work of preparing the instrumentality for use—i. e., the work of priming and capping it there, with the boy and his companions standing near, warming their augers, as they had been told to do. Certainly the boy could not be said to be away from his place of work, so as to absolve his master from the duty of maintaining it in a reasonably safe condition, or at least of not allowing or

making it to become unduly dangerous. In the circumstances here considered, the place the master is required to keep reasonably safe, or at least not to render unduly dangerous, cannot be restricted to the very spot occupied by the stumps under which the boy was expected to bore after he had warmed his auger. It also included the spot where the fire was, and the two were so near to each other and so connected together as to form all one and the same place, and to make the master's duty apply. [Clark v. Union Iron Co., 234 Mo. 452.]'"

Defendant cites McCall v. Nugent Dry Goods Co., 236 S. W. 324. In that case this Division reversed the judgment of the court below, sustaining a demurrer to the evidence, and distinguished that case from McIntyre v. Tebbetts, supra. The question of safe place to work was not decisive, but was touched upon in reference to the slippery nature of the step of the delivery truck. The facts in the McCall and McIntyre cases are not sufficiently similar to those in the case at bar to render those cases in anywise controlling here.

The last case cited by defendant is Rowe v. United Railways Co., 211 Mo. App. 526. There the defendant here was joined as a defendant with the street railway company in a suit for damages to the helper upon a delivery truck. The case was reversed and remanded as to the street railway company, and reversed outright as to defendant Kroger Grocery & Bakery Company. This was because the plaintiff and the driver of the truck were fellow-servants and the Kroger Company was not liable for the negligence of the driver, which contributed to the injury of the helper. The injury was caused by a collision between a truck and the street car. We find no reason to disagree with the conclusion reached upon the facts of that case by the St. Louis Court of Appeals. But those facts are not at all similar to the facts in this case.

In this case the plaintiff was directed to enter the trailer and remove the empty bread trays. Such trailer was his place of work at the time and the duty of

the defendant to exercise ordinary care to keep such place reasonably safe while plaintiff was engaged in working therein at once attached and that duty was a non-delegable one. In directing Rufgardner to detach the tractor and move it away from the trailer, it was the duty of defendant to see that Rufgardner did not perform his work negligently. He performed that act, which affected the security of the place wherein plaintiff was instructed to work, in a negligent manner. For that negligence defendant was liable, regardless of whether or not Rufgardner was ordinarily a fellow-servant of the plaintiff.

The case of White v. Montgomery Ward & Company, supra, presents a state of facts quite similar to the case at bar. Plaintiff was injured by the fall of a runway which connected the platform of a railroad car with the dock or platform of the building. The duty of securing such runway, so that it would not be displaced by the movement over it of trucks pulled by plaintiff and his fellow-workers, was intrusted to a fellow-servant who performed his work negligently. The runway was part of the place where plaintiff was required to work. Judge Ellison said:

"Nor is there ground for the claim that Brown, who, as we have stated, is said to have placed and secured the end of the runway in the car, was solely to blame and that his negligence was that of a fellow-servant and gave plaintiff no cause of complaint against defendant, their common employer. Defendant cannot shift the duty to provide a safe place to work. [Zellars v. Mo. Water Co., 92 Mo. App. 123-127; Johnson v. Bolt & Nut Co., 172 Mo. App. 219; Scheidler v. Iron Works, 172 Mo. App. 694; Mullery v. Telephone Co., 180 Mo. App. 128.] And if we grant that Brown ordinarily would have been regarded as a fellow-servant and that he may have performed the manual labor in attempting to attach the end of the runway to the car, it counts for nothing. It is oftener than otherwise, that the employer does not, himself, perform the labor of fixing or constructing a

310 Mo. Sup.—32.

place in or about which his employees are to work. It is his duty to see that his servants who do the labor, do it properly. And it is said by our Supreme Court, and by this court, that when the master uses another servant in fixing or constructing a place in which other servants are to perform their duties, the former servant, while so engaged, is not a fellow-servant. [Koerner v. St. Louis Car Co., 209 Mo. 158; Zellars v. Mo. Water Co., 92 Mo. App. 123-127.]''

In Koerner v. St. Louis Car Company, supra, the plaintiff was a car painter, working upon a car which was moved without notice to him, whereby he was injured. The car and his scaffold, erected very close to the car, constituted his place of work, which was rendered unsafe by the act of another employee in pulling out other cars, coupled on to the one upon which he was working, without warning to him. The master was held liable, regardless of whether or not such other employee was a fellow-servant. Judge GANTT said:

''The duty of the master in this regard is a continuing one and it will not suffice to say that when plaintiff went to work on the car it was a reasonably safe place. If the place was afterwards rendered unsafe by the negligent act of the defendant in sending a switching crew in there who negligently pulled the car upon which plaintiff was working without giving him warning of their intention to move it, then defendant was liable for the consequence of the negligent act of the switchman. The plaintiff had the right to presume, in the absence of knowledge to the contrary, that the defendant would furnish him a reasonably safe place in which to work and that he would not imperil his safety by sending its servants in there to move the car upon which he was working, without notifying him. [Doyle v. M. K. & T. Trust Co., 140 Mo. 1.]

''But it may be said that the switchman was not the vice-principal of the defendant in moving and directing the car to be moved whereby plaintiff was injured. On this point this court in Moore v. Railroad, 85 Mo. 588,

approved the doctrine laid down by Wood on Master and Servant, page 860, as follows: 'Whenever the master delegates to another the performance of a duty to his servants, which the master has impliedly contracted to perform in person, or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middleman whom he has selected as his agent, and, to the extent of the discharge of those duties by the middleman, he stands in the place of the master, but as to all other matters he is a mere servant.' "

The same general rule is supported by numerous other cases cited by plaintiff. We find no case to the contrary which is at all similar in its essential facts to the case at bar. The place of work assigned to plaintiff by defendant's foreman was the trailer of the truck. It constituted his place of work for the time being, just as much as any permanent structure. The defendant was liable for the negligent performance of any act directed by it to be performed by any employee, whether of high or the most lowly degree, which affected the safety of that place. The duty of exercising ordinary care to keep such place reasonably safe was a continuing and non-delegable duty. For the negligent act of the employee, to whom such duty was assigned, the defendant is liable.

The evidence offered by plaintiff tended to prove a case of this sort and he had the right to have his case submitted to the jury. The order of the court in setting aside the involuntary nonsuit and granting a new trial was eminently proper. The judgment below is affirmed and the cause remanded for retrial.

All concur.