JOHN P. JOHNSON, Appellant, v. CORN PRODUCTS REFINING COMPANY.—6 S. W. (2d) 568.

Division One, April 11, 1928.

*L. N. Musser* and *Mosman, Rogers & Buzard* for appellant.

*Morrison, Nugent, Wylder & Berger* for respondent.

RAGLAND, J.—This is a suit by an employee against his employer to recover $40,000 for personal injuries sustained by the former in the course of his employment through the alleged negligence of the latter. At the close of plaintiff's case in chief, the trial court sustained defendant's demurrer to the evidence. Thereupon plaintiff took an involuntary nonsuit with leave. A motion to set aside the nonsuit was filed in due course; and overruled. This appeal on the part of plaintiff followed.

The facts are simple. Respondent operated a manufacturing plant at North Kansas City. Appellant was employed in the tin-plate department. His duties were to truck tin plates from the railroad cars in which they arrived at the plant into a room of respondent's building called the tin-room. Appellant and other employees of respondent were so engaged on the morning of December 13, 1922. Loaded cars were stationed alongside a concrete-loading platform which came up to the level of the floors of the cars. The tin was loaded on trucks which were then pulled across the platform, through a doorway and into the tin-room, where it was unloaded and piled. The doorway just referred to was an opening five or six feet wide and seven or seven and one-half feet high. The door itself was quite heavy; it was raised and lowered by means of chains and pulleys. Ordinarily the door remained open; but on the day just mentioned the superintendent of the plant told the foreman in charge of

the men unloading the tin that the "girls upstairs," other employees, were complaining of the cold, and for that reason he must put a man at the door to open it when the men with a truck of tin approached and then close it as soon as they had passed through. The foreman accordingly placed an employee named Puckett at the door to open and close it as the ingress and egress of the men required. Prior to such assignment Puckett himself had been engaged in unloading the tin.

The men employed in removing the tin from the cars into the building worked in pairs, two with each truck. Appellant and a fellow-employee named Bronson were working together. On the occasion when appellant was injured he and Bronson had just unloaded in the tin-room a truck load of tin. Together they pulled the empty truck, on the way back to the car, as far as the door. Appellant then turned the truck over to Bronson, who went on through the door, and stepped over to a water tank on the inside of the room, near the door. Just before starting to the tank appellant looked at Puckett, who was on the opposite side of the door and on the inside of the room, to see if Puckett was observing him; Puckett was looking directly at him. Appellant then went to the tank and took a drink of water, which occupied but a few seconds. He then, without again looking at Puckett, started out through the door; as he was in the act of passing under the door Puckett lowered it, striking appellant on the head, knocking him to his knees and severely injuring him.

The question presented for determination on this appeal is whether the injury complained of was caused by a negligent failure of the employer to furnish its employee with a reasonably safe place in which to work, or whether such injury must be attributed to the negligence of a fellow-servant. Appellant invokes the familiar doctrine that the duty of the master to exercise ordinary care to furnish his servant with a reasonably safe place in which to work is a personal and continuing one. Respondent makes rejoinder and says that the place it furnished was safe, that there was no defect in either the door or the appliance for opening and closing it, and that having furnished such a door and put a competent servant in charge of it, it acquitted itself of all further responsibility. It is often difficult to determine in a given case whether the duty to furnish a safe place, although it is a continuing one, has been breached. It has been said that any negligence which results in injury to some one makes a particular spot or place dangerous or unsafe. But such a view followed to its logical sequence would result in entirely wiping out the fellow-servant doctrine. In cases like the one under consideration, where injury to one servant is caused by the negligent act of another, the test sometimes applied in determining whether the master is liable, and one which we regard as sound in principle, is this: Did the

negligent act have a direct relation to the place of work? or was it merely incidental to the work itself—an "operative detail?" [Miller v. Centralia Pulp Co., 134 Wis. 316; Daves v. Southern Pacific Co., 98 Cal. 19; 18 R. C. L. 735, sec. 209.] In applying in the instant case the test just referred to, the question resolves itself into whether the act of raising and lowering the door was one related primarily to the place of work, or whether it was merely an incident of the operation of moving the tin from the cars into the building. It can of course be said that, inasmuch as it was necessary for the door to be kept closed when not in use, Puckett's acts in opening and closing it relieved the men who were trucking the tin from using a portion of their time in so doing, and thereby furthered the work in which they were engaged. But even when so viewed, we are not persuaded that the opening and closing door was not first and primarily a constituent element of the environment in which the men were required to work. The door itself was a physical part of "the place in which to work." The sole purpose of opening and closing it was to make the place safe and suitable for the different operations being carried on in it. If the door had been equipped with an automatic device which would have opened or closed it upon the pushing of an electric button, such device would unquestionably have been regarded as a constituent of the place of work. The fact that an animate instead of an inanimate instrumentality was used for that purpose, does not, we think, warrant a different conclusion.

It is equally clear that the opening and closing of the door was neither a part of the work of moving the tin nor incident to that work. Ordinarily the door was left open, and closing it tended to obstruct that operation. At the particular time of the occurrence which caused appellant's injuries, respondent was keeping the door closed when not in actual use for the purpose of protecting employees in the upper part of the building from the drafts of cold air which were coming through it when open. In other words, the keeping of the door closed was the measure taken to make the place a safe place in which to work for the girl employees upstairs. It was evidently respondent's purpose to furnish these latter employees the greatest amount of protection consistent with the unimpeded work of moving the tin.

If the opening and closing of the door was, as we hold, an attribute of the place of work, the duty of exercising ordinary care in the performance of the acts connected therewith was personal to the master. Consequently Puckett, when placed in charge of the door, to open and close it, became with respect to that task a vice-principal, although a fellow-servant as to all others. "A person employed to

perform any of the master's duties toward his servant is, while that relation continues and in respect to such duties, no fellow-servant of the latter." [Dayharsh v. Railroad, 103 Mo. 570, 575, 15 S. W. 554; see also Koerner v. St. Louis Car Co., 209 Mo. 141, 157, et seq., 107 S. W. 481; Bender v. Grocery & Baking Co., 310 Mo. 488, 276 S. W. 405.]

It follows that, if Puckett was negligent with respect to the handling of the door and that such negligence caused plaintiff's injuries, all of which the evidence tends to show, the respondent is liable.

In view of the conclusions reached, the action of the trial court should be reversed and the cause remanded with directions to that court to set aside the involuntary nonsuit and award plaintiff a new trial. It is so ordered. All concur.