

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| CURT PETERS and CHERI PETERS, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | No. SC94442 |
| | ) | |
| WADY INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and PATRICK TERRIO, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY**
**The Honorable Jon Cunningham, Judge**

*Opinion issued June 7, 2016*

Curt and Cheri Peters filed a personal injury action against Patrick Terrio, alleging that Mr. Peters was injured at work because Mr. Terrio, a supervisory co-employee, was negligent. The trial court dismissed the Peterses' claims against Mr. Terrio, finding they failed to allege Mr. Terrio owed Mr. Peters a duty outside of their employer's nondelegable duty to provide a safe workplace. The Peterses appealed, asserting that their petition alleges sufficient facts to support a common law negligence action against Mr. Terrio.

At the time of Mr. Peters' work-related injuries, immunity from common law liability as provided for under section 287.120, RSMo Supp. 2005,[1] of the workers' compensation law was limited to employers, and an injured employee could maintain a cause of action recognized by common law against a co-employee. At common law, co-employees are liable to their fellow employees for breaches of a duty owed independently of the master-servant relationship. Inherently, if a co-employee is assigned to perform an employer's nondelegable duties, performance of that duty derives solely from the master-servant relationship, and a co-employee cannot be liable for a breach of such a duty. Because the Peterses pleaded facts establishing only duties that are a part of the employer's nondelegable duty to provide a safe workplace, their petition failed to state a negligence cause of action against Mr. Terrio. Therefore, this Court affirms the trial court's judgment dismissing the Peterses' claims against Mr. Terrio.

**Factual and Procedural Background**

Mr. Peters and Mr. Terrio were employed by Tramar Contracting, Inc., a company that specializes in providing services and products to general contractors in the construction industry. Among its services, Tramar delivers dowel baskets, which are 200-pound rebar paver baskets used in concrete construction, manufactured by Wady Industries. Wady Industries shipped the dowel baskets to Tramar stacked, one on top of the other, without warning, bracing, or other precautionary measures. Upon arriving at Tramar, the dowel baskets were kept in this stacked manner in a staging area until they

---

[1] Citations to statutes that do not include a reference to the applicable version of the Revised Statutes of Missouri are to RSMo Supp. 2005.

2

were needed. Once needed, the baskets were moved from the staging area to a specified construction site in the same stacked manner in which they were shipped by Wady Industries.

Mr. Terrio, a project manager for Tramar, had received warnings from other employees about the potential safety hazards posed by the stacked dowel baskets. Despite these warnings, on September 24, 2008, Mr. Terrio ordered that the dowel baskets be delivered to a construction site on a Tramar flatbed truck while kept in the stacked manner in which they were sent to Tramar. A row of baskets fell from the flatbed truck onto Mr. Peters, causing permanent and catastrophic injuries.[2]

Mr. and Ms. Peters filed suit against Wady Industries and Mr. Terrio. Among other claims in their petition, Mr. Peters asserted a claim for negligence against Mr. Terrio, and Ms. Peters asserted a loss of consortium claim based on Mr. Peters' injuries.[3] In the claims against Mr. Terrio, the Peterses alleged that Mr. Terrio was negligent in that he breached his duty to exercise reasonable care in the following ways:

> a. [Mr. Terrio] allowed the baskets to be transported on a flatbed truck while stacked at a level that exceeded a safe height;
>
> b. [Mr. Terrio] failed to insure that the baskets were properly braced or secured for transportation and unloading;
>
> c. [Mr. Terrio] failed to provide sufficient help; . . .

---

[2] The petition does not reveal where the accident occurred or what Mr. Peters was doing at the time of the accident.

[3] Loss of consortium is a derivative claim arising out of the spouse's injury. *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 465 (Mo. banc 2001). Because Ms. Peters' loss of consortium claim is dependent on Mr. Peters' negligence claim, the Court need discuss only Mr. Peters' negligence claim.

d. [Mr. Terrio] failed to provide adequately trained help; . . .

e. [Mr. Terrio] failed to provide a proper area for the unloading of the baskets; . . .

f. [Mr. Terrio] failed to heed the warnings of employees about the stacked baskets;

g. [Mr. Terrio] allowed the unsafe course to become standard operating procedure;

h. [Mr. Terrio] ordered and directed plaintiff Curt Peters to load, stack, transport, and unload the baskets in the aforementioned unsafe manner; [and]

i. [Mr. Terrio] ordered and directed plaintiff Curt Peters to load, transport, and unload the baskets in the aforementioned manner in violation of OSHA Regulations including 29 CFR 1926.250 (a)(1).

In his answer to the petition, Mr. Terrio raised several affirmative defenses, including that the Peterses' claims are barred by Missouri's workers' compensation laws, section 287.010, *et seq.*, and asserted that the Peterses failed to state a cause of action. Mr. Terrio also filed a motion to dismiss the Peterses' claims for lack of subject matter jurisdiction. Specifically, Mr. Terrio argued that the Peterses' claims fall within the exclusive purview of workers' compensation laws because the Peterses did not allege any conduct by Mr. Terrio that lies outside of Tramar's nondelegable duties to provide a safe workplace. The trial court sustained Mr. Terrio's motion to dismiss, finding that the Peterses failed to allege that Mr. Terrio owed a duty independently of Tramar's

4

nondelegable duty to provide a safe workplace. The court entered judgment dismissing the Peterses' claims against Mr. Terrio.[4]

The Peterses appealed to the court of appeals, and the majority affirmed the trial court's dismissal. The dissenting judge certified the case for transfer to this Court. Mo. Const. art. V, sec. 10.

## Standard of Review

This Court reviews a trial court's grant of a motion to dismiss *de novo*. *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 413 (Mo. banc 2014). Mr. Terrio filed a motion to dismiss on the ground that the trial court lacked subject matter jurisdiction, arguing that the exclusive remedy for the Peterses' claims is provided by Missouri's workers' compensation laws, section 287.010 *et seq.*, and that the Peterses failed to allege Mr. Terrio breached a duty he personally owed to the Peterses. Applicability of the workers' compensation laws is an affirmative defense and not a matter of the trial court's jurisdiction. *McCracken v. Wal-Mart Stores East, LP*, 298 S.W.3d 473, 479 (Mo. banc 2009). Although not a jurisdictional claim, Mr. Terrio's motion to dismiss raised the claim that the Peterses failed to state a cause of action against him. *See Leeper v. Asmus*, 440 S.W.3d 478, 482 (Mo. App. 2014).

"A motion to dismiss for failure to state a claim tests the adequacy of a plaintiff's petition." *Conway*, 438 S.W.3d at 413-14. "When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly

---

[4] The Peterses voluntarily dismissed their claims against Wady Industries after the trial court dismissed their claims against Mr. Terrio.

5

pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012). The Court reviews the petition to see if the facts alleged, given their broadest intendment, meet the elements of a cause of action that is recognized or that might be adopted. *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329 (Mo. banc 2009).

## No Immunity Under the Workers' Compensation Law

In his motion to dismiss, Mr. Terrio argued that the exclusive remedy for the Peterses' claims is provided for by the workers' compensation law. More specifically, Mr. Terrio asserted that employer immunity under the workers' compensation law extends to co-employees in negligence actions when it is alleged that the co-employee failed to maintain a safe working environment. At the time of Mr. Peters' injuries, however, the workers' compensation law provided no immunity to co-employees from common law negligence actions.

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Howard v. City of Kansas City*, 332 S.W.3d 772, 787 (Mo. banc 2011) (internal quotation omitted). "If the intent of the legislature is clear and unambiguous, by giving the language used in the statute its plain and ordinary meaning, then [this Court is] bound by that intent and cannot resort to any statutory construction in interpreting the statute." *Id.* (internal quotation omitted).

When Mr. Peters was injured, the exclusivity provisions of the workers' compensation law provided:

6

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. . . .

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

Section 287.120, RSMo Supp. 2005. Section 287.120.1 addressed an *employer*'s liability under the workers' compensation law for accidents arising out of and in the course of an employee's employment and released *employers* from all other liability for the work-related accident. Section 287.120.1 was silent as to *co-employees*. The plain language of section 287.120.1, therefore, pertained only to employers.

As relevant to this case, "employer" is defined as "[e]very person, partnership, association, corporation, limited liability partnership or company . . . using the service of another for pay."[5] Section 287.030.1(1), RSMo 2000. Even when performing an

_____

[5] The full definition of "employer" in section 287.030.1, RSMo 2000, reads:
(1) Every person, partnership, association, corporation, limited liability partnership or company, trustee, receiver, the legal representatives of a deceased employer, and every other person, including any person or corporation operating a railroad and any public service corporation, using the service of another for pay;
(2) The state, county, municipal corporation, township, school or road, drainage, swamp and levee districts, or school boards, board of education, regents, curators, managers or control commission, board or any other political subdivision, corporation, or quasi-corporation, or cities under special charter, or under the commission form of government;
(3) Any of the above-defined employers must have five or more employees to be deemed an employer for the purposes of this chapter unless election is made to become subject to the provisions of this chapter as provided in

7

employer's nondelegable duties, a co-employee is not using the service of another for pay. A co-employee, therefore, did not fall within the statutory definition of "employer" under the workers' compensation law. It follows that, because a co-employee was not an employer under the workers' compensation law, section 287.120.1, RSMo Supp. 2005, did not release co-employees from any liability resulting from the work-related accident.

Because at the time of Mr. Peters' injuries section 287.120.1 did not release a co-employee from any liability, Mr. Peters retained his rights and remedies at common law against any co-employee. Section 287.120.2, RSMo Supp. 2005, provided that the rights and remedies afforded to an injured employee under the workers' compensation law "shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of such accidental injury or death, *except such rights and remedies as are not provided for by this chapter.*" (Emphasis added). Section 287.120.2, therefore, permitted employees to pursue civil suits for claims against parties not covered by the workers' compensation law. Because section 287.120.1, RSMo Supp. 2005, pertained only to an employer's liability, co-employees were not released from any liability under the workers' compensation law. Consequently, at the time Mr. Peters sustained his injuries, the plain language of the exclusivity provisions did not preclude

subsection 2 of section 287.090, except that construction industry employers who erect, demolish, alter or repair improvements shall be deemed an employer for the purposes of this chapter if they have one or more employees. An employee who is a member of the employer's family within the third degree of affinity or consanguinity shall be counted in determining the total number of employees of such employer.

8

Mr. Peters from pursuing a common law negligence claim against Mr. Terrio, his co-employee.

Despite the plain language of the exclusivity provisions, Missouri courts have previously held that, in limited circumstances, an employer's immunity under the workers' compensation law extends to co-employees. *See, e.g., State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 621 (Mo. banc 2002); *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 180 (Mo. App. 1982). The holding that immunity extended to co-employees, however, was inconsistent with established workers' compensation law precedent and resulted in the adoption of a standard not supported under any construction of the workers' compensation law's exclusivity provisions.

Prior to the passage of Missouri's workers' compensation laws, employers were not liable for injuries to employees that were caused by the negligent acts of a "fellow servant." *Bender v. Kroger Grocery & Baking Co.*, 276 S.W. 405, 406 (Mo. 1925). An exception existed, however, under which an employer could be held liable when the injury was caused by a co-employee who was negligent in carrying out the employer's nondelegable duty to provide a safe workplace. *Id.*

The enactment of the Missouri workmen's compensation law in 1925 altered the landscape of common law negligence actions against employers. It created a "no-fault system of compensation for the employee" under which an employer was liable irrespective of negligence in exchange for immunity against common law negligence actions. *Gunnett v. Girardier Bldg. and Realty Co.*, 70 S.W.3d 632, 636 (Mo. App. 2002). The workers' compensation laws were intended to replace common law actions

9

against employers for an employee's work-related injuries. *Bass v. Nat'l Super Markets., Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995); *Gunnett,* 70 S.W.3d at 636. As initially adopted, however, employers and employees could opt out of the workers' compensation statutory scheme and, when the employer opted in but the employee opted out, the employer could use certain defenses, including the fellow servant doctrine, in actions by injured employees. Section 287.080, RSMo 1949. Following the repeal in 1978 of the statute allowing employees and employers to opt out, such defenses by employers were no longer relevant, and employers enjoyed immunity from common law actions. *See Hansen v. Ritter*, 375 S.W.3d 201, 209 n.11 (Mo. App. 2012).

Missouri's workers' compensation laws were initially found to protect only employers and did not prohibit injured employees from bringing common law actions against negligent third parties, including co-employees. *Schumacher v. Leslie*, 232 S.W.2d 913, 916 (Mo. banc 1950); *Gardner v. Stout*, 119 S.W.2d 790, 792 (Mo. 1938); *Sylcox v. Nat'l Lead Co.*, 38 S.W.2d 497, 501 (Mo. App. 1931). It was not until *Badami*, 630 S.W.2d at 180, that a Missouri court extended an employer's immunity under the workers' compensation law to co-employees.

In *Badami*, the plaintiff was injured at work when his hand was drawn into a shredding machine. *Id.* at 176. The plaintiff recovered workers' compensation benefits for his injuries but also filed a negligence action against the employer's president and production manager for failing to equip the shredding machine with certain safety devices that would have prevented the plaintiff's injuries. *Id.* at 175. The president and production manager filed a motion to dismiss in which they argued immunity under

10

Missouri's workers' compensation laws. *Id.* at 176. When the trial court overruled the motion to dismiss, the president and production manager filed a writ of prohibition. *Id.*

The court of appeals began its analysis by recognizing that, at common law, an employer's duty to provide a safe workplace for employees was not delegable and co-employees could be liable to fellow employees only for misfeasance, rather than nonfeasance. *Id.* at 177-78. Instead of applying these common law principles to find that the president and production manager, as co-employees, could not be held liable for failure to fulfil the employer's duty to provide a safe workplace, the court went on to consider whether the exclusivity provisions under the workers' compensation law applied to co-employees discharging their employer's duty to provide a safe workplace. *Id.* at 176-77.

In determining the applicability of the workers' compensation law, the court looked at the law in other jurisdictions, including the "Wisconsin approach":

> There it is held that a corporate officer or supervisory employee performs in a dual capacity. He has immunity under the workmen's compensation law where his negligence is based upon a general non-delegable duty of the employer; he does not have immunity where he does an affirmative act causing or increasing the risk of injury. Something "extra" is required beyond a breach of his duty of general supervision and safety, for that duty is owed to the employer, not the employee.

*Id.* at 179. The court then adopted the "Wisconsin approach" to find a co-employee has immunity under the workers' compensation law when discharging the employer's nondelegable duties and that "[s]omething more" than a failure to fulfil the employer's duty to provide a safe work place must be charged to find actionable negligence. *Id.* at 180.

11

Perhaps because the defendant co-employees sought dismissal on the ground of immunity under the workers' compensation laws or because foreign jurisdictions had analyzed co-employee liability in that manner, the court in *Badami* conflated a co-employee's liability under Missouri common law with whether the co-employee was included in the immunity granted to employers under Missouri's workers' compensation law. *Id.* at 179-80. Instead of analyzing the liability of the co-employees in terms of whether the co-employees breached a common law duty owed to the fellow employee independent of any master-servant or agent-principal relationship, the *Badami* court analyzed whether the co-employees fit within employer immunity under the workers' compensation law. *Id.*

While the resulting "something more" test proved consistent with the common law principle that co-employees cannot be liable for breaching an employer's nondelegable duty to provide a safe workplace, the extension of "immunity" to co-employees under the workers' compensation law was inconsistent with the plain language of the exclusivity provisions. In construing a statute, courts cannot "add statutory language where it does not exist"; rather, courts must interpret "the statutory language as written by the legislature." *Frye v. Levy*, 440 S.W.3d 405, 424 (Mo. banc 2014). Section 287.120, RSMo Supp. 2005, as written, released employers from all other liability for the work-related accident. A court cannot read or add co-employees into the language of the statute to grant them the same immunity from common law actions granted to employers

under the exclusivity provisions. At the time of Mr. Peters' injuries, therefore, section 287.120 did not provide immunity to co-employees such as Mr. Terrio.[6]

It should be noted, however, that in 2012, the legislature amended section 287.120 to state:

> Any employee of such employer shall not be liable for any injury or death for which compensation is recoverable under this chapter and every employer *and employees of such employer* shall be released from all other liability whatsoever, whether to the employee or any other person, except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.

Section 287.120.1, RSMo Supp. 2012 (emphasis added). The amended statute does provide immunity to co-employees except when "the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury."

---

[6] In *Robinson v. Hooker*, 323 S.W.3d 418, 424-25 (Mo. App. 2010), the court of appeals held that *Badami*'s extension of immunity to co-employees performing the employer's nondelegable duty is no longer permitted under a strict construction of the workers' compensation law. At the time the *Badami* court adopted the Wisconsin approach, section 287.800, RSMo 2000, stated that "[a]ll of the provisions of [the workers' compensation law] shall be liberally construed with a view of the public welfare[.]" In 2005, however, the legislature amended section 287.800 to require strict construction of the workers' compensation law. The *Robinson* court found the change from liberal to strict construction of the statute eliminated co-employee immunity under the workers' compensation law. Courts resort to rules of liberal or strict construction, however, only when a statute is ambiguous. *See Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 666 & n.2 (Mo. banc 2015). Moreover, whether liberally or strictly construed, "[c]ourts cannot add words to a statute under the auspice of statutory construction." *Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 390 (Mo. banc 2002). Liberal construction does not give courts license to extend a statute beyond its plain terms. *See State ex rel. Am. Asphalt Roof Corp. v. Trimble*, 44 S.W.2d 1103, 1105 (Mo. banc 1931). Accordingly, although *Robinson* correctly held that co-employees were not entitled to immunity under section 287.120.1, RSMo Supp. 2005, co-employee immunity was not eliminated as a result of the change from liberal to strict construction of the workers' compensation law. Rather, prior to the 2012 amendments, co-employees were never entitled to immunity under the plain language of section 287.120.

13

*Id.* Accordingly, this Court's holding that the exclusivity provisions of the workers' compensation law provide no immunity to co-employees is limited to injuries occurring before the 2012 amendments.[7]

## A Co-Employee's Duty at Common Law

Because the workers' compensation law afforded Mr. Terrio no immunity from common law negligence actions, this Court must now turn to whether the Peterses pleaded facts in their petition sufficient to state a common law negligence claim against Mr. Terrio. In his motion to dismiss, Mr. Terrio asserted that the Peterses failed to state a claim of negligence against him in that the Peterses failed to allege Mr. Terrio owed a duty separate and distinct from Tramar's nondelegable duty to provide a safe workplace. The trial court sustained Mr. Terrio's motion to dismiss on this ground. Accordingly, the Peterses' appeal of the trial court's ruling requires review of whether their petition states a claim upon which relief may be granted. *Leeper*, 440 S.W.3d at 482.

The Peterses claim the allegations in their pleading stated a common law claim of negligence against Mr. Terrio. "In any action for negligence, the plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *Martin v. City of Washington*, 848 S.W.2d 487, 493 (Mo. banc 1993). Whether

---

[7] Notably, although employees who sustained injuries prior to 2012 are not precluded under the workers' compensation law from pursuing common law causes of action against co-employees, section 287.150 of the workers' compensation law provides employers with subrogation rights with respect to an employee's recovery against third persons, including co-employees.

Mr. Terrio owed a duty to Mr. Peters is purely a question of law.[8] *Hoffman v. Union Elec. Co.*, 176 S.W.3d 706, 708 (Mo. banc 2005).

Mr. Terrio argues that the duties the Peterses allege he breached are part of the employer's nondelegable duty to provide a safe workplace and, therefore, cannot constitute duties owed by him to Mr. Peters at common law. Originally at common law, the extent of an employee's liability to third persons, including fellow employees, was dependent upon whether the employee's conduct was categorized as misfeasance (the negligent performance of a duty) or nonfeasance (the failure to perform a duty). *Hansen*, 375 S.W.3d at 210. As explained in *McCarver v. St. Joseph Lead Co.*:

> [T]he term nonfeasance refers to the omission on the part of the agent to perform a duty which he owes to the principal by virtue of the relationship existing between them, but whenever the omission on the part of the agent consists of his failure to perform a duty which he owes to third persons, then, as to such third persons, his omission amounts to misfeasance for which he is responsible.

268 S.W. 687, 690 (Mo. App. 1925) (quotations omitted); *see also Wright v. Hannan & Everitt, Inc.*, 81 S.W.2d 303, 304 (Mo. 1935). With respect to nonfeasance, "[t]he duties owed by an agent to a principal included the duty to perform the principal's non-delegable duties." *Hansen*, 375 S.W.3d at 211. Accordingly, under early common law principles, "there was a recognized distinction between a breach of the employer's duty to provide a safe workplace, which could not result in a co-employee's liability to an

---

[8] In *Leeper*, the court of appeals concluded that, while duty is a question of law, whether a co-employee owed a duty is dependent on resolution of whether the injury was caused by the employer's breach of a nondelegable duty, which is a question of fact. 440 S.W.3d at 486-87. As explained in the companion case of *Parr v. Breeden*, __ S.W.3d __ (Mo. banc 2015) (No. SC94393), *Leeper* is overruled to the extent that it holds that the existence of a duty is not purely a question of law.

15

injured co-worker, and a breach of a personal duty of care, which could result in a co-employee's liability to an injured co-worker." *Id.* (internal quotation omitted).

This Court later held that the misfeasance/nonfeasance dichotomy was "a fictitious distinction, which can only result in confusion." *Lambert v. Jones*, 98 S.W.2d 752, 757 (Mo. 1936). To eliminate this confusion, the Court clarified the test for when an employee may be liable to third persons, stating:

> [A] servant or agent is liable for acts or omissions causing injury to third persons whenever, under the circumstances, he owes a duty of care in regard to such matters to such third persons. In short, he would be liable whenever he is guilty of such negligence as would create a liability to another person if no relation of master and servant or principal and agent existed between him and someone else.

*Id.* at 759.[9] "In other words, the liability of the servant or agent . . . results from the breach of a duty owed to the third party under the law, which makes him liable without regard to whether he is the servant or agent of another or not." *Ryan v. Standard Oil Co. of Indiana*, 144 S.W.2d 170, 173 (Mo. App. 1940). Accordingly, following *Lambert*, employees are liable at common law to third persons, including other co-employees, for breaching a legal duty owed independently of any master-servant relationship. *Hansen*, 375 S.W.3d at 213.

The standard set forth in *Lambert*, however, did not alter a co-employee's liability with respect to carrying out the employer's nondelegable duties. *See id.* at 213-14. Inherently, a co-employee's breach of the employer's nondelegable duty to provide a safe

---

[9] Though *Lambert* involved premise liability, the Court's analysis was not limited to such cases and has been used as stating general agency law. *See Westerhold v. Carrol*, 419 S.W.2d 73, 81 (Mo. 1967).

16

workplace does not constitute a breach of a duty owed independently of the master-servant relationship. "If co-employees are assigned to perform the employer's non-delegable duties, it is solely by virtue of the master-servant relationship." *Id.* at 213. Absent the master-servant relationship, a co-employee would have no duty to perform an employer's nondelegable duties. It follows, then, that a legal duty owed by a co-employee to a third person is a duty separate and distinct from an employer's nondelegable duties.

Under Missouri law, it is well established that an employer owes certain nondelegable duties to its employees with respect to safety and that, even if an employer assigns the performance of those duties to an employee, the employer remains liable for any breach of such duties. *Edge v. Sw. Missouri Elec. Ry. Co.*, 104 S.W. 90, 97 (Mo. 1907). An employer's nondelegable duties are continuing in nature, *Bender*, 276 S.W. at 408, and include the following specific duties:

1. The duty to provide a safe place to work.

2. The duty to provide safe appliances, tools, and equipment for work.

3. The duty to give warning of dangers of which the employee might reasonably be expected to remain in ignorance.

4. The duty to provide a sufficient number of suitable fellow servants.

5. The duty to promulgate and enforce rules for the conduct of employees which would make the work safe.

W. Keeton, Prosser and Keeton on the Law of Torts, section 80 at 569 (5th ed. 1984); *see also Kelso v. W.A. Ross Const. Co.*, 85 S.W.2d 527, 534-36 (Mo. 1935); *Schaum v. Sw. Bell Tel. Co.*, 78 S.W.2d 439, 442 (Mo. 1934).

17

Included within the employer's duty to provide a safe workplace is a duty to see that instrumentalities of the workplace are used safely:

> [T]he place in which the work is done cannot always be separated from the instrumentalities with which the work is done and it is often difficult, if not impossible, to say with confidence which of these two conceptions is appropriate to the facts in evidence. For example, a locomotive, which is clearly a piece of machinery so far as the engineer and fireman are concerned, is just as clearly something which makes the place of work unsafe as regards a trackman who is run down by it. Thus the manner in which instrumentalities are used may make a place safe or unsafe as a place of work, and, therefore, the duty to see that instrumentalities are safely used may become the most important element in the safety of a workman in his place of work.

*Kelso*, 85 S.W.2d at 534-35 (internal quotations omitted). The scope of the employer's duty to provide a safe workplace, therefore, is dependent on several factors, including the nature of the employer's work and the risks associated with the work. *See id.*

The employer's duty to provide a safe workplace is not unlimited, however. "Employers are not insurers of the safety of employees." *Graczack v. City of St. Louis*, 202 S.W.2d 775, 777 (Mo. 1947). "Except in the cases in which the master is himself directing the work in hand, his obligation to protect his servants does not extend to protecting them from the transitory risks which are created by the negligence of the servants themselves in carrying out the details of that work." *Kelso*, 85 S.W.2d at 535-36.

This Court's analysis in *Marshall v. Kansas City*, 296 S.W.2d 1 (Mo. 1956), exemplifies the distinction between an employer's nondelegable duty to provide a safe workplace and a co-employee's duty arising from transitory risks in how the co-employee carries out the details of his or her work. In *Marshall*, the plaintiff was injured when his

18

co-employee shook a compressor hose to remove the kinks and caused the plaintiff to trip. *Id.* at 2. In holding that the plaintiff's injuries resulted from the co-employee's negligence and not the employer's breach of its nondelegable duty to provide a safe workplace, this Court reasoned:

> [The plaintiff's] injury came about by reason of [the co-employee's] negligent use of the hose and not because it was defective. Likewise the place of work was not unsafe and the hazard was not brought about by the manner in which the work was being done; the danger came about by reason of the manner in which [the co-employee] handled the hose. . . . [The co-employee's] suddenly and unexpectedly jerking the hose and tripping [the plaintiff] was not, of course, the exercise of due care on his part but it does not support the inference or demonstrate negligence on the part of the [employer] with respect to either the tools furnished, place of work or the manner in which the work was being done.

*Id.* at 3 (internal citations omitted). *Marshall*, therefore, demonstrates that when an employee's injuries result from the tools furnished, the place of work, or the manner in which the work was being done, the injuries are attributable to a breach of the employer's nondelegable duty to provide a safe workplace. When, however, the employee's injuries result from a co-employee's negligence in carrying out the details of the work, the injuries are attributable to the co-employee's breach of a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace.

Accordingly, under common law, co-employees are liable to their fellow employees for breaches of a duty owed independently of the master-servant relationship – that is, a duty separate and distinct from the employer's nondelegable duties – including instances in which injury results from transitory risks created by the co-employee's negligence in carrying out the details of his or her work. An injured employee, therefore,

cannot maintain a common law negligence action against a co-employee when the duties breached were part of the employer's nondelegable duty to provide a safe workplace.

## Applicability of *Badami's* "Something More" Test

As previously discussed, prior to the 2012 amendments, co-employees did not have immunity under the workers' compensation law and were subject to liability at common law for their actions. Nevertheless, our discussion of a co-employee's liability at common law requires a discussion of the viability, if any, of the "something more" test set forth in *Badami*, 630 S.W.2d at 180.

The court in *Badami* created a "something more" test as a means of providing immunity to co-employees under the workers' compensation law when the co-employee was discharging the employer's nondelegable duty to provide a safe workplace. *Id.* The test was utilized by this Court and the court of appeals thereafter as a limitation on the co-employee's immunity under workers' compensation. *See State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 622-23 (Mo. banc 2002); *Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670, 672 (Mo. banc 1993); *State ex rel. Title Loan Co. v. Vincent*, 239 S.W.3d 136, 138 (Mo. App. 2007); *Groh v. Kohler*, 148 S.W.3d 11, 16 (Mo. App. 2004), *abrogated on other grounds by Burns v. Smith*, 214 S.W.3d 335, 338-39 (Mo. banc 2007); *Wright v. St. Louis Produce Market, Inc.*, 43 S.W.3d 404, 414 (Mo. App. 2001). Despite the fact that courts used *Badami*'s "something more" test to determine immunity under the workers' compensation law, *Badami*'s "something more" analysis was consistent with common law co-employee liability principles. Accordingly, cases applying the "something more" test can still prove instructive in a common law analysis.

20

In adopting the "something more" test as a means of determining when immunity applies to co-employees, the court relied upon the common law principles that the duty to provide a safe workplace is the employer's and cannot be delegated to employees and that co-employees are liable to fellow employees for misfeasance  630 S.W.2d at 177-78. The court noted that the distinction between misfeasance and nonfeasance had been effectively eliminated in agency and tort law but, nevertheless, believed the distinction remained for purposes of determining whether co-employees were entitled to immunity under Missouri's workers' compensation law.  *Id.* at 178-79.  The court's continued recognition of the distinction between misfeasance and nonfeasance resulted in the court adopting the approach that required an *affirmative* act for the co-employee to be held liable.  *See id*. at 179.  Nonetheless, *Badami*'s ultimate conclusion that "[c]harging the employee chosen to implement the employer's duty to provide a reasonably safe place to work merely with the general failure to fulfill that duty charges no actionable negligence" and that "[s]omething more must be charged" accurately reflects the common law regarding a co-employee's duty.  *Id.* at 180; *see also Hansen*, 375 S.W.3d at 216. Therefore, to the extent cases applying the "something more" test require more than allegations of the failure to fulfill the employer's nondelegable duty to provide a safe workplace, they are consistent with the common law.

With that said, however, cases applying *Badami*'s "something more" test repeatedly required an *affirmative* act, which is a vestige of the distinction between misfeasance and nonfeasance. *Leeper*, 440 S.W.3d at 490.  When this Court eliminated this distinction at common law, it implemented a standard that focused not on affirmative

21

conduct by the co-employee but on whether the co-employee breached a duty owed independently of the employer-employee relationship – that is a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace. *See Lambert*, 98 S.W.2d at 759. Accordingly, to the extent that the "something more" test requires allegations of affirmative conduct on the part of the co-employee, the test is not applicable to co-employee liability cases in which the common law applies.

Moreover, the evolution of the "something more" test to require purposeful conduct is also inconsistent with an employee's common law duties to third persons. While the "something more" test, as initially articulated, closely followed the common law, this Court later held that "[a] simple allegation of negligent driving by a co-employee . . . [was] not 'something more' than an allegation of a breach of the duty to maintain a safe working environment." *Taylor*, 73 S.W.3d at 622-23, *overruled on other grounds by McCracken*, 298 S.W.3d 473. The Court reasoned that negligent driving was "not the kind of purposeful, affirmatively dangerous conduct that Missouri courts have recognized as moving a fellow employee outside the protection of the Workers' Compensation Law's exclusive remedy provisions." *Id.* at 622.

Cases applying the "something more" test post-*Taylor* found a co-employee was immune under workers' compensation laws unless the co-employee "engage[d] in inherently dangerous conduct purposefully directed at" the injured employee. *Nowlin ex rel. Carter v. Nichols*, 163 S.W.3d 575, 579 (Mo. App. 2005), *abrogated on other grounds by Burns*, 241 S.W.3d 335; *Groh*, 148 S.W.3d at 16. In *Burns*, this Court noted that the "something more" test encompasses "an affirmative act that creates an additional

22

danger beyond that normally faced in the job-specific work environment" but reaffirmed *Taylor*'s standard as "purposeful, affirmatively dangerous conduct." 214 S.W.3d at 338.

Contrary to the post-*Taylor* "something more" test, common law does not limit a co-employee's liability to conduct that is purposeful, inherently dangerous, or directed to the injured employee. For example, in *Marshall*, 296 S.W.2d at 2-3, this Court concluded that the employer's duty to provide a safe workplace did not include a co-employee's negligent shaking of a compressor hose to remove the kinks that caused his fellow employee to trip over the hose. In *Logsdon v. Duncan*, 293 S.W.2d 944, 948 (Mo. 1956), this Court concluded that a co-employee breached a personal duty to a fellow employee when he negligently removed debris on a roof by "punch[ing] and dislodg[ing] the debris from behind the chimney with a board," which caused a brick to fall and strike the fellow employee below. The conduct at issue in *Marshall* and *Logsdon* would not have satisfied the post-*Taylor* "something more" test as neither case involved purposefully nor inherently dangerous conduct on behalf of the co-employee. The post-*Taylor* "something more" test, therefore, conflicts with common law co-employee liability to the extent it requires purposeful, inherently dangerous conduct.[10]

### Application of Common Law to the Peterses' Negligence Claim

Applying the common law, this Court finds the Peterses' allegations in their petition fail to allege breach of a duty owed by Mr. Terrio separate and distinct from

---

[10] The 2012 amendment to section 287.120.1 provides employees with immunity unless the "employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury." The language of this amendment closely follows *Taylor*'s refinement of the "something more" test. 73 S.W.3d at 622. The affirmative negligent act standard codified in the 2012 amendment is not before this Court.

Tramar's duty to provide a safe workplace. In their general allegations relevant to claims against Wady Industries as well as Mr. Terrio, the Peterses allege that, despite warnings from Tramar employees regarding the safety hazards posed by the stacked dowel baskets, Mr. Terrio ordered that the dowel baskets be sent to a job site on a flatbed truck stacked in an unsafe manner without bracing or other safety precautions. In their negligence count against Mr. Terrio, the Peterses allege that Mr. Terrio "had a duty to exercise reasonable care for the safety of others including [Mr. Peters] at all relevant times." The Peterses allege that Mr. Terrio breached that duty by allowing the dowel baskets to be stacked in an unsafe manner without bracing or other safety precautions, by failing to provide sufficient and adequately trained help to transport the baskets, and by not providing a proper area to unload the baskets. The duties to provide safety equipment, a sufficient number of competent employees, and a safe place to unload the baskets fall squarely within the employer's duty to provide a safe workplace. *Kelso*, 85 S.W.2d at 534-36. Such duties, therefore, cannot constitute a duty separate and distinct from an employer's nondelegable duty to provide a safe workplace.

The Peterses further allege in their petition that Mr. Terrio breached his duty to exercise reasonable care for the safety of others, including Mr. Peters, by directing Mr. Peters to load, stack, transport, and unload the baskets in an unsafe manner and in violation of OSHA regulations. The Peterses assert that the breach does not fall under Tramar's nondelegable duties because an employer's nondelegable duty to provide a safe workplace "is not applicable where that environment becomes unsafe solely through the default of the servant himself, or his fellow employees." *Id.* at 536. The Peterses argue

24

that Mr. Terrio created the unsafe environment in which Mr. Peters was injured when he directed Mr. Peters to deliver the baskets and unload the baskets while the baskets were stacked in an unsafe manner despite being warned of the danger.

This Court recognizes that the employer's nondelegable duty to provide a safe workplace does not include transitory risks arising from an employee's negligence in carrying out his or her work. *See id.* at 535-36. Nevertheless, the pleadings do not support the Peterses' assertion on appeal that this is a situation in which an unsafe work environment resulted from Mr. Terrio negligently carrying out the details of his work. Rather, the allegations pertain to Mr. Terrio, in his supervisory role as project manager, negligently carrying out Tarmar's nondelegable duty to provide a safe workplace.

In their petition, the Peterses allege that the baskets arrived from the supplier stacked without warning, bracing, or other precautionary measures; that the baskets were kept in the same stacked fashion in the staging area of the construction site until needed; and that, once needed, the baskets would be moved to the job site in the same manner in which they arrived. The Peterses also allege that Mr. Terrio, in his role as Tramar's project manager, was responsible for the manner in which the baskets were loaded, stacked, and transported. The Peterses further allege that stacking, loading, and transporting of the baskets in such a fashion had "become standard operating procedure" at Tramar. The pleadings, therefore, indicate that the allegedly unsafe stacking of the baskets constituted the ordinary manner of work at Tramar.

As this Court explained in *Kelso*, part of an employer's duty in providing a safe work environment is "provid[ing] a safe method of work." *Id.* at 535. The Peterses

allege that the manner in which Mr. Terrio directed Mr. Peters to load, stack, and transport the baskets was unsafe. The Peterses' allegations as to the unsafe stacking of the baskets go to the manner in which the work was being performed under Tramar's standard operating procedures. Because providing a safe method of work is encompassed in the employer's nondelegable duty to provide a safe workplace, such allegations are insufficient to establish Mr. Terrio owed a duty to Mr. Peters independently of the master-servant relationship. Rather, this is a classic case of a supervisory employee breaching the employer's nondelegable duty to provide a safe workplace.

While Mr. Terrio was allegedly responsible for the unsafe manner in which the work was routinely performed, it is Tramar's nondelegable duty to provide a safe work environment, *id.*, and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide. *See Bender*, 276 S.W. at 406. The allegations in the petition were that Mr. Peters was ordered and directed to conduct work in the allegedly unsafe manner in the course of business. These allegations distinguish this case from instances in which a co-employee negligently carried out some detail or aspect of his work.

For example, in *Burns*, 214 S.W.3d at 336, the co-employee negligently welded a corroded water pressure tank on a cement mixer truck that subsequently exploded when the co-employee ordered the plaintiff to "Run it till it blows." This Court determined that the co-employee could be held liable for his negligent conduct, which fell outside the employer's responsibility to provide a safe workplace. *Id.* at 339-40. Likewise, in *Tauchert v. Boatmen's National Bank of St. Louis*, 849 S.W.2d 573, 574 (Mo. banc

26

1993), the plaintiff was injured when an elevator fell several stories due to a co-employee's negligence in using a faulty, makeshift hoist system to raise the elevator for its final inspection. This Court concluded that the co-employee's actions went beyond the employer's duty to provide a safe workplace and could constitute a breach of the co-employee's personal duty of care owed to the plaintiff. *Id.* The Peterses failed to allege any such similar aspect or detail of work that Mr. Terrio negligently carried out other than that, in his role as project manager, Mr. Terrio negligently performed Tramar's nondelegable duty to provide a safe manner or place of work. Accordingly, the Peterses' petition fails to state a cause of action for negligence against Mr. Terrio in that the Peterses failed to allege that Mr. Terrio owed a duty separate and distinct from Tramar's nondelegable duty to provide a safe workplace.

**Conclusion**

For cases arising prior to the 2012 amendments to the exclusivity provisions of the workers' compensation law, co-employees do not have immunity from suits by injured fellow employees. In such cases, the common law governs liability. While the "something more" test adopted in *Badami* was utilized to provide immunity under the workers' compensation law for co-employees in certain cases, the test was generally consistent with the common law principle that an employee cannot be held liable for breach of the employer's nondelegable duty to provide a safe workplace. To the extent the "something more" test required affirmative conduct for the co-employee to be liable and to the extent the post-*Taylor* "something more" test required purposeful and dangerous conduct, however, the test conflicts with common law and should not apply to

27

co-employee liability cases arising prior to the 2012 amendments. Applying the common law to this case, this Court finds the Peterses failed to state a negligence cause of action against Mr. Terrio because they failed to allege any duty of care owed by Mr. Terrio separate and distinct from Tramar's nondelegable duty to provide a safe workspace. Consequently, this Court affirms the trial court's judgment.

_____
PATRICIA BRECKENRIDGE, JUDGE

Stith, Draper and Russell, JJ., concur;
Fischer, J., concurs in result in separate
opinion filed; Wilson, J., concurs in result
in separate opinion filed; Teitelman, J.,
dissents in separate opinion filed.



# SUPREME COURT OF MISSOURI
## en banc

CURT PETERS and CHERI PETERS, )
                                 )
             Appellants, )
                                 )
v.                                  )      No. SC94442
                                 )
WADY INDUSTRIES, INC., )
                                 )
             Defendant, )
                                 )
and PATRICK TERRIO, )
                                 )
            Respondent. )

## OPINION CONCURRING IN RESULT

I concur with the result reached in the principal opinion, but would overrule the court of appeals' decision in *Leeper v. Asmus*, 440 S.W.3d 478 (Mo. App. 2014), and continue to apply the "something more" test consistent with its well-established meaning in this Court. That is, "[a]n employee may sue a fellow employee **only for affirmative negligent acts** outside the scope of an employer's responsibility to provide a safe workplace." *Piatt v. Indiana Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 794 (Mo. banc 2015) (internal quotations omitted) (emphasis added). However, as recognized by the principal opinion, its holding relevant to the "something more" test is limited to a finite number of cases as it applies only to cases arising prior to the 2012 amendment to § 287.120.1, an amendment that effectively codified the "something more" test as

previously applied by this Court. Because § 287.120.1 governs co-employee liability cases now and going forward, I decline to fully expound upon the differences I have with the principal opinion.

_____
Zel M. Fischer, Judge



# SUPREME COURT OF MISSOURI
## en banc

CURT PETERS and CHERI PETERS,     )
                                 )
             Appellants,        )
                                 )
v.                              )     No. SC94442
                                 )
WADY INDUSTRIES, INC.,       )
                                 )
             Defendant,       )
                                 )
and PATRICK TERRIO,         )
                                 )
             Respondent.     )

## OPINION CONCURRING IN RESULT

I concur in the result reached in the majority opinion, but am dubitante as to the discussion of the common law for co-employee liability.

I take the majority opinion as saying that – even though an injured worker does not need to show fault on the part of the employer to recover under the statutory workers' compensation scheme – an injured worker's sole remedy is workers' compensation and may not recover from a co-employee in tort when the injury results from a breach of the employer's non-delegable duties (among others) to provide a safe manner or place for work to be done. On that, I concur.

But, to the extent that the majority opinion suggests that a co-employee may be liable to an injured worker in tort regardless of whether the co-employee commits an

affirmative negligent act or merely fails to act, I am concerned the majority goes too far. Resolution of this case does not require abandoning the well-established rule that a co-employee cannot be liable to an injured co-worker in tort unless the co-employee commits an affirmative negligent act, and I doubt that this rule will fail to resolve any of the limited universe of these cases arising before the 2012 amendment to section 287.120.1, RSMo. The "affirmative act" rule reflects the conclusion that – when an injured worker claims that a co-employee was negligent by omission (i.e., that the co-employee had a duty to act to protect the injured worker and did not do so) – the co-employee should not be liable in tort because the only source of such an affirmative duty to act to protect workers' safety is the employer's non-delegable duty to provide a safe workplace. In other words, the only duty of a co-employee to another worker that is independent of the employer's non-delegable duty act (and, therefore, actionable in tort) is the duty not to act affirmatively to expose that worker to an unreasonable risk of harm not reasonably forseeable to the employer.

Accordingly, it is sufficient for the present to concur in the result reached in the majority opinion without necessarily concurring in its suggestion that a co-employee may be liable to an injured worker in tort without committing an affirmative negligent act.

_____
Paul C. Wilson, Judge



# SUPREME COURT OF MISSOURI
## en banc

CURT PETERS and CHERI PETERS,    )
    )
                Appellants,    )
    )
v.    )    No. SC94442
    )
WADY INDUSTRIES, INC.,    )
    )
                Defendant,    )
    )
and PATRICK TERRIO,    )
    )
                Respondent.    )

**DISSENTING OPINION**

I respectfully dissent. Mr. Peters' supervisor, Mr. Terrio, ordered Mr. Peters to deliver stacks of 200-pound rebar paver baskets to a construction site even though the baskets were stacked too high and were not braced or secured for transport. Mr. Terrio ordered Mr. Peters to perform these dangerous actions, yet the principal opinion holds that he is immune from liability as a matter of law because Mr. Terrio's actions were in no way separate or distinct from the employer's duty to maintain a safe workplace. These allegations, taken as true and construed favorably to the Peterses, support a conclusion that Mr. Peters was injured at work as a result of Mr. Terrios's actions.

When Mr. Peters was injured, section 287.120.1 did not release co-employees such as Mr. Terrio from co-employee liability. Therefore, the Peterses' claim against

Mr. Terrio was governed by the common-law standards governing claims against co-employees. At common law, an "employer is liable for the negligent performance of any act directed by it to be performed by any employee . . . which affects the safety of the workplace" and "[r]isks that are attendant to performing the employer's work as directed are thus necessarily subsumed within the employer's non-delegable duties, and cannot support an independent personal duty owed by a co-employee." *Leeper v. Ausmus,* 440 S.W.3d 478, (Mo. App. 2014). The employer's obligation to protect its employees does not extend to injuries caused by the negligence of employees in carrying out the details of the work directed by the employer. *Id*. at 488; (citing *Kelso v. W.A. Ross Const. Co.*, 85 S.W.2d 527, 534-36 (Mo. 1935)). Therefore, under the common law, the Peterses had to prove that the "employer performed all of its non-delegable duties such that a reasonably safe workplace, a safe instrumentality of work, and safe methods of work, became unsafe solely through the fault of [Mr. Terrio], a determination that depends on the facts and circumstances of the workplace injury." *Id.* Before a court can determine the legal question of whether a co-employee owes a duty in negligence at common law, the court must assess the facts and circumstances of the employment at issue to determine the inherently factual question of whether the workplace injury was caused by the employer's breach of a nondelegable duty or by the co-employee's negligence in carrying out the details of the work directed by the employer. The principal opinion discards *Leeper*, but *Leeper's* explanation of the common law is convincing and supported directly by the language of this Court's opinions.

2

The Peterses' petition alleges that Mr. Terrio breached a duty to exercise care for Mr. Peters' safety by ordering him to move and transport the 200-pound baskets despite Mr. Terrio's direct knowledge that his orders created a safety hazard. In other words, Mr. Terrio ordered Mr. Peters to perform his work in a particular, detailed and unreasonably dangerous manner. The details of Mr. Terrio's orders proved disastrous. Consequently, I would reverse the judgment of dismissal and remand the case for further litigation to develop the facts of the case.

_____
Richard B. Teitelman