**John T. WILLIAMS, Plaintiff– Appellant,**

v.

**Mike ROBERTS and Kim Holloway, Defendants–Respondents.**

**No. SD 34536**

Missouri Court of Appeals, Southern District, Division Two.

Filed: April 20, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied May 12, 2017

332

Appellant's Attorney: Phillip J. Barkett, Jr., Matthew D. Glenn, and Kathleen Anderson Wolz, of Cape Girardeau, MO

Respondents' Attorney: Terry M. Evans, of Trenton, MO

### WILLIAM W. FRANCIS, JR., J.

John T. Williams ("Williams") appeals the trial court's grant of summary judgment in favor of Mike Roberts ("Roberts") and Kim Holloway ("Holloway") (referred to collectively as "co-employees"), finding that there was "no triable issue of any material fact." Williams claims that co-employees are not entitled to summary judgment because Williams produced facts sufficient to support a finding that co-employees breached a personal duty owed to him that was separate and apart from the nondelegable duties of their employer. We agree, reverse the trial court's judgment, and remand the case for further proceedings consistent with this opinion.

### Facts and Procedural History

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "We accord the non-movant the benefit of all reasonable inferences from the record." *Id.* So viewed, the facts are as follows.

In January 2012, Williams and co-employees were employed by Associated Electric Co-op, Inc. ("AECI"). Williams was employed as a journeyman mechanic in the coal yard maintenance department at the New Madrid Power Plant ("NMPP"), and had been with AECI since January 1978. It is undisputed that Williams and co-employees were all working in the course and scope of their employment on the day of the accident.

On January 11, 2012, co-employees were assigned the task of cleaning up the top floor of the NMPP crusher house, which required lowering any materials by crane through the outside door, to the ground. The top floor was approximately 60 feet from the ground. Williams' job was to be the "ground man" to secure the area and ensure no one entered the drop zone. During the process of co-employees rigging and lowering a load of materials, a piece of channel iron came loose hitting Williams and causing serious injury.

Williams' recollection was that within a minute or two of his arrival at the drop zone, co-employees began lowering the materials. Williams was not told what materials were being lowered, but did recognize a 4–wheel cart—approximately 3–foot wide and 4–foot long—upon which materials were stacked. Co-employees were using two choker straps and a rope to lower the materials, but did not use a "come along," even though one was also available in the

tool room. Williams disputes that the configuration used by co-employees to rig the load was appropriate. It was undisputed that if the load had been secured properly, the 51–pound piece of channel iron would not have come loose from the rigging allowing the channel iron to strike him.

Williams observed as co-employees began to lower the materials, the cart wheels would not clear the toe board.[1] Roberts radioed Williams to advise they were taking the load back inside the crusher house to be re-rigged, and would radio Williams when they were ready to begin re-lowering the load. Williams, believing that the load was being taken back inside to be re-rigged and believing that he would be notified when co-employees intended to begin re-lowering the materials, left his buggy and began to walk toward the north side of the crusher house to ensure no one was coming into the danger zone because he did not have time to secure the area with cones and tape.

While walking to the north side of the crusher house, Williams was hit with the piece of channel iron. Apparently, while inside being re-rigged, the load became tilted causing the channel iron to come loose and fall striking Williams. Williams sustained a broken left shoulder and collar bone, three broken ribs, injury to his spleen, a laceration to his head, lost three teeth, a compression fracture to the thoracic region of his spine, and a brachial plexus injury.

Co-employees assert that as they began to lower the load, it became hung up on the corner of a vent brace attached to the crusher house. After a discussion, co-employees made the decision to continue lowering the load in hopes it would become unstuck. As co-employees continued to lower the load, the load tipped and the channel iron slipped from the rigging, striking Williams on his head and shoulders, knocking him to the ground. Co-employees claimed that the load only tipped slightly.

In October 2015, Williams filed his first amended petition naming co-employees as defendants. In separate counts, Williams alleged co-employees were each negligent in that they owed Williams a "personal duty to exercise reasonable care so that [their] actions did not create additional dangers beyond those normally found in [Williams'] work environment." Williams further asserted that co-employees failed to exercise reasonable care and affirmatively breached a personal duty of care which they independently owed to Williams in one or more of the following respects:

(a) [Co-employees] violated AECI's safety policies when [they] chose to begin lowering materials from the upper floor of the crusher house when [they] knew that they were not properly secured and when [they] knew that items falling from a distance of fifty (50) feet or more could reasonably result in death or seriously [sic] bodily injury to [Williams] who was acting as [the] 'ground man.'

(b) [Co-employees] violated AECI's safety policies when [they] carelessly and recklessly operated the sling device which lowered materials from the upper floor of the crusher house when [they] knew that items falling from a distance of fifty (50) feet or more could reasonably result in death or seriously [sic] bodily injury to

---

1. A toe board is a 4–inch piece of metal welded to the floor to prevent workers from potentially knocking materials out of the crusher house and onto someone on the ground below.

[Williams] who was acting as [the] 'ground man.'

(c) [Co-employees] violated AECI's safety policies when [they] carelessly and recklessly failed to warn [Williams] when the materials that were being lowered shifted so that [Williams] could move to an area of safety.

On April 1, 2016, co-employees filed their "Joint Motion for Summary Judgment," "Joint Statement of Uncontroverted Facts" consisting of 96 purportedly uncontroverted facts, and "Suggestions in Support of [Co-employees'] Joint Motion for Summary Judgment." In the motion, co-employees asserted that Williams was unable to produce any evidence to support his theory that co-employees failed to exercise reasonable care and affirmatively breached a personal duty of care independently owed to him; co-employees did not engage in an affirmative negligent act that purposefully and dangerously caused or increased the risk of harm to Williams; and co-employees did not violate a personal duty of care owed to Williams. Co-employees asserted that it was Williams' own reckless conduct that solely caused the hazard by walking into the fall zone.

Williams timely filed his responses to co-employees' uncontroverted material facts, and submitted 66 of his own supplemental material facts.

During oral argument in this Court, the parties agreed there were material facts in dispute as to how the accident took place. The pleadings and summary judgment record framed key issues of whether co-employees properly secured the load, whether they warned Williams they were getting ready to lower the load, and if policies of the employer were followed.

On June 6, 2016, a hearing was held and the trial court heard argument. On June 9, 2016, the trial court entered its "Judgment and Order" finding there was "no triable issue of any material fact" and co-employees were entitled to judgment as a matter of law. This appeal followed.

In one point on appeal, Williams asserts the trial court erred in granting summary judgment for co-employees in that the summary judgment record was insufficient to support the trial court's finding that co-employees did not breach a personal duty owed to Williams.

### Standard of Review

On appeal, an appellate court reviews summary judgment *de novo*. Summary judgment is proper when the movant shows a right to judgment flowing from facts about which there is no genuine dispute. A genuine dispute exists when the issue, or dispute, is a real and substantial one—one consisting not merely of conjecture, theory and possibilities. Evidence in the record is viewed in the light most favorable to the party against whom judgment was entered with the benefit of all reasonable inferences from the record. *Brentwood Glass Co., Inc. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 300 (Mo. banc 2016) (internal quotations and citations omitted).

### Analysis

As an initial matter, we must take note of both parties' substantial failure to follow the procedure for summary judgment as set forth by Rule 74.04.[2] A statement of uncontroverted material fact is not the proponent's opportunity to introduce, in a general sense, an exhibit or deposition, and then later expound on the contents of the exhibit or deposition in the argument section of its motion; rather,

**2.** All rule references are to Missouri Court Rules (2016).

each proposed undisputed material fact must be a discrete *fact*, the existence or non-existence of which, in combination with other facts or by itself, would show that proponent is entitled to judgment as a matter of law.

Despite this longstanding mandate and case law warnings we have cited, the error seen in this case occurs too frequently, even when the trial judge and lawyers are, as here, excellent. Movants often cite primarily or exclusively to affidavits, exhibits, and discovery—material with a critical *supporting* role in our numbered-paragraphs-and-responses framework. Courts cannot sift through a voluminous record, separating fact from conclusion, admissions from disputes, the material from the immaterial, in an attempt to determine the basis for the motion without impermissibly acting as advocates. Rule 74.04(c) aims at benefiting trial and appellate courts to expedite the disposition of cases; noncompliance with these requirements is not a matter subject to waiver by a party.

The lesson bears repeating: summary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone.*

*Lackey v. Iberia R–V Sch. Dist.*, 487 S.W.3d 57, 62 (Mo.App. S.D. 2016) (internal quotations and citations omitted) (emphasis in original).

Or, as we restated and re-emphasized in *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo.App. S.D. 2016):

- Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework.
- Courts determine and review summary judgment *based on that Rule 74.04(c) record, not the whole trial court record.*
- Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.*

(Emphasis in original) (internal footnotes omitted).

And, as we have most recently explained:

In developing the Rule 74.04(c) record, the parties are required to support each stated material fact with specific references to attached pleadings, discovery, exhibits, or affidavits. The function of the specifically referenced evidentiary material is, depending upon which party is asserting the material fact, to demonstrate the lack of a genuine issue, as to that particular material fact or to demonstrate that it remains in dispute. Regardless of what evidentiary material is attached to the parties' statements of facts, however, *only those material facts set forth in the parties' statements of facts may be considered in determining whether summary judgment is appropriate.*

*Columbia Mutual Insurance Company v. Leslie Heriford and Crystal Lee*, 518 S.W.3d 234, 240, (Mo.App. S.D. 2017) (internal quotations and citations omitted) (emphasis added).

Both parties cursorily presented materials in their statement of uncontroverted material facts, and then, in their arguments, delved deeply into portions of those materials not otherwise presented as affirmative or negative facts. This is not how Rule 74.04 was designed to function, and inhibits the efficacy of both motions.

Even ignoring these serious Rule 74.04 violations, the summary judgment

record shows a clear dispute as to material facts at issue, notwithstanding the admissions by the parties during oral arguments.

 Under our supreme court's recent decisions in *Parr v. Breeden*, 489 S.W.3d 774 (Mo. banc 2016), and *Peters v. Wady Industries, Inc.*, 489 S.W.3d 784 (Mo. banc 2016), co-employees acting negligently within the scope of employment are not granted immunity under section 287.120, RSMo. (2000) of the Workers' Compensation Act for injuries caused by their negligent acts committed between 2005 and 2012.[3] Rather, to determine co-employee liability during this timeframe, we consider a claim for a co-employee-caused workplace injury as it would any common law negligence claim. At common law, "an employee may be liable for injuries to another employee caused by a breach of a duty of care owed by the employee independent of the master-servant relationship." *Parr*, 489 S.W.3d at 779.

 At common law, the employer has certain nondelegable duties for which it remains liable, regardless of whether the employer has assigned these duties to an employee. These duties are: (1) the duty to provide a safe workplace; (2) the duty to provide safe appliances, tools, and equipment; (3) the duty to give warning of dangers of which the employee might reasonably be expected to remain in ignorance; (4) the duty to provide a sufficient number of suitable co-employees; and (5) the duty to promulgate and enforce rules for the conduct of employees to ensure the safety of the workplace. *Peters*, 489 S.W.3d at 795; *Parr*, 489 S.W.3d at 779.

 However, if the co-employee's act falls outside the employer's nondelegable duties and instead violates a personal duty of care, the co-employee may be liable at common law, regardless of whether he or she was performing his or her job when the injury occurred. *See Peters*, 489 S.W.3d at 792–93; *Parr*, 489 S.W.3d at 779.

Our supreme court examined the difference between these two kinds of duties in *Peters*, by discussing the holding in *Marshall v. Kansas City*, 296 S.W.2d 1 (Mo. banc 1956):

> [*Marshall*] exemplifies the distinction between an employer's nondelegable duty to provide a safe workplace and a co-employee's duty arising from transitory risks in how the co-employee carries out the details of his or her work. In *Marshall*, the plaintiff was injured when his co-employee shook a compressor hose to remove the kinks and caused the plaintiff to trip. In holding that the plaintiff's injuries resulted from the co-employee's negligence and not the employer's breach of its nondelegable duty to provide a safe workplace, this Court reasoned:
>
> > The plaintiff[']s injury came about by reason of the co-employee's negligent use of the hose and not because it was defective. Likewise the place of work was not unsafe and the hazard was not brought about by the manner in which the work was being done; the danger came about by reason of the manner in which [the co-employee] handled the hose. The co-employee's suddenly and unexpectedly jerking the hose and tripping the plaintiff was not, of course, the exercise of due care on his part but it does not support the inference or demonstrate negligence on the part of the employer with re-

---

**3.** Williams' injury occurred on January 11, 2012, and falls within this statutory timeframe.

spect to either the tools furnished, place of work or the manner in which the work was being done.

*Marshall*, therefore, demonstrates that when an employee's injuries result from the tools furnished, the place of work, or the manner in which the work was being done, the injuries are attributable to a breach of the employer's nondelegable duty to provide a safe workplace. When, however, the employee's injuries result from a co-employee's negligence in carrying out the details of the work, the injuries are attributable to the co-employee's breach of a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace. Accordingly, under common law, co-employees are liable to their fellow employees for breaches of a duty owed independently of the master-servant relationship—that is, a duty separate and distinct from the employer's nondelegable duties—including instances in which injury results from transitory risks created by the co-employee's negligence in carrying out the details of his or her work. An injured employee, therefore, cannot maintain a common law negligence action against a co-employee when the duties breached were part of the employer's nondelegable duty to provide a safe workplace.

*Peters*, 489 S.W.3d at 796.

Here, the undisputed material facts in the summary judgment record, with all reasonable inferences given to Williams, are insufficient to show that Williams' injuries were not caused by "co-employee[s'] negligence *in carrying out the details of the work*, [such that] the injuries are attributable to ... co-employee[s'] breach of a duty separate and distinct from [AECI's] nondelegable duty to provide a safe workplace." *Id.* (Emphasis added). Rather, there are open-fact issues as to whether co-employees properly secured the load, whether co-employees provided a tag line for Williams to use, whether co-employees provided sufficient warning to Williams when they were lowering the load, whether co-employees acted appropriately in continuing to lower the load once it became snagged, and whether co-employees followed AECI policies—that is, whether co-employees were negligent in *carrying out the details of their work.* Co-employees' personal duty to Williams is therefore implicated under these facts, so that the summary judgment record is insufficient to show that co-employees were entitled to judgment as a matter of law. *See id.* The trial court erred in granting summary judgment to co-employees.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

NANCY STEFFEN RAHMEYER, J.—CONCURS

DANIEL E. SCOTT, J.—CONCURS